THE CLUB ALUMINUM COMPANY *vs.* ALBERT D. YOUNG
& another.

SAME *vs.* JULIEN JOSLIN EDGERLY & another.

Suffolk.     November 28, 1927.— April 3, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction*, Specific performance. *Contract*, In restraint of freedom of employment, Validity. *Agency*, Restraint of freedom of employment. *Unlawful Interference. Good Will. Trade Secret.*

A bill in equity by a company engaged in the manufacture and sale of aluminum cooking utensils alleged that, under a plan originated by it for marketing its product, it gave specialized training and supervision to its salesmen, who acquired expert knowledge in salesmanship, dietetics, hygienics and home economics; that the plan consisted of inducing a housewife to gather a group of friends, to whom the salesman gave a practical demonstration of the advantages of cooking with the plaintiff's product, after which the salesman called on each person present and endeavored to make a sale; that there were three other companies which had adopted the plaintiff's plan or a similar one; that the defendant entered the plaintiff's employ as a salesman under a contract which provided that for one year after its termination he would "not engage . . . in the sale of aluminum cooking utensils by a similar plan" to that used by the plaintiff in certain States; that the defendant received specialized training and instructions and personal supervision for about three months, after which he left the service of the plaintiff and entered

that of a competitor as a salesman by a plan similar to that described above. The bill sought to enjoin the defendant from remaining in the employ of the competitor contrary to the terms of the contract. *Held,* that

(1) The allegations of the bill did not show wrongful use by the defendant of knowledge of trade or business secrets in which the plaintiff had special proprietary rights, nor interference with the plaintiff's good will;

(2) The contract sought unreasonable restraint of freedom of employment;

(3) The suit could not be maintained.

TWO BILLS IN EQUITY, filed in the Superior Court on May 2, 1927, and afterwards amended.

The bills and demurrers by the defendants are described in the opinion. The demurrers were heard by *Morton,* J., by whose order were entered interlocutory decrees sustaining the demurrers and final decrees dismissing the bills. The plaintiff appealed.

*A. B. Comstock, (F. H. Free, Jr.,* with him,) for the plaintiff.
*W. Gates, Jr.,* for the defendants.

RUGG, C.J. These are suits in equity whereby the plaintiff seeks to have two of its former employees enjoined from remaining in the employ of a competitor contrary to the terms of a contract. The defendant in each case demurred to the plaintiff's bill on the ground of (1) want of equity and (2) the unreasonableness of the terms of the contract as being contrary to public policy. The demurrers were sustained and a final decree entered in each case dismissing the bill. Appeals by the plaintiff bring the cases here.

The allegations in the first bill, which are substantially the same as those of the second bill, are in brief these: The plaintiff is engaged in the manufacture and sale of aluminum cooking utensils, and conducts a large business and has many employees. For some years it has employed a plan of marketing its product, first originated by the officers of its predecessor which involves specialized training and supervision of salesmen, who must acquire expert knowledge in salesmanship, dietetics, hygienics and home economics. This system involves financial loss to the company until the particular salesman has the requisite knowledge. The method of sale consists of inducing some housewife to gather a group of her friends, to which the salesman gives a practical

demonstration of the advantages of cooking with the plaintiff's product. Thereafter, the salesman calls upon each person present and endeavors to make a sale. Elaboration of this plan of sale with many laudatory epithets is set forth in the bill. It is averred that an officer of the plaintiff company originated its plan of marketing its product before coming with the plaintiff, and that there are three other companies which have adopted the plaintiff's plan or a somewhat similar one, but there are many other companies competing with the plaintiff without the use of such plan. The defendant Young entered the employ of the plaintiff as a salesman and remained in such employment for about three months. During this period he "received specialized training and instruction and personal supervision at considerable expense to the plaintiff." Then, without legal excuse and without the consent of the plaintiff, he left the service of the plaintiff and entered the employment of one of its competitors as a salesman of aluminum cooking utensils by a plan similar to that in use by the plaintiff. Young entered into a written contract whereby he agreed to work for the plaintiff as salesman. One clause of that contract was to the effect that for one year after its termination for any cause Young would "not engage . . . in the sale of aluminum cooking utensils by a similar plan" to that used by the plaintiff, "either for himself or for others in the states in which" the plaintiff was operating at the time of the termination of the contract. The question to be decided is whether upon these allegations, which for the purpose of the present discussion must be taken to be true, the plaintiff is entitled to enforce specifically this clause of the agreement.

The governing principles upon this branch of the law have been considered in several recent cases. It was said in *Sherman* v. *Pfefferkorn,* 241 Mass. 468, at page 474: "It long has been settled that contracts restraining freedom of employment can be enforced only when they are reasonable and not wider than is necessary for the protection to which the employer is entitled and when not injurious to the public interest. . . . As stated by Lord Macnaghten in *Nordenfeldt* v. *Maxim Nordenfeldt Guns & Ammunition Co. Ltd.*

[1894] A. C. 535, 565: 'The public have an interest in every person's carrying on his trade freely: so has the individual. All interference with individual liberty of action in trading, and all restraints of trade of themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule.   But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case.   It is a sufficient justification, and indeed it is the only justification, if the restriction is reasonable — reasonable, that is, in reference to the interests of the parties concerned and reasonable in reference to the interests of the public, so framed and so guarded as to afford adequate protection to the party in whose favour it is imposed, while at the same time it is in no way injurious to the public.   That, I think, is the fair result of all the authorities.'   This rule is in accord with our cases.   It must be applied with reference to con-. ditions existing at the time in the particular business concerned."   This principle was applied to the enforcement of a contract for personal employment and specific performance of an agreement restricting within certain limits working for others, in *Boston & Suburban Laundry Co.* v. *O'Reilly,* 253 Mass. 94, in *Chandler, Gardner & Williams, Inc.* v. *Farrell,* 252 Mass. 341, in *Chandler, Gardner & Williams, Inc.* v. *Reynolds,* 250 Mass. 309, and in *Edgecomb* v. *Edmonston,* 257 Mass. 12.   In all these cases there was not only the element of using for the benefit of another employer information confidentially acquired as to details of business, but also the element of protection to the good will of an established business.   The use of the information thus obtained amounted in those cases to a breach of duty.   The use of trade or business secrets gained through employment may properly be made the subject of restrictive agreements.   In this class fall also agreements not to use lists of customers and not to entice old customers away by any form of solicitation.   Knowledge confidentially gained in the course of employment may be made the subject of restrictive agreement and acts in derogation of such a contract will be restrained. But an employer cannot by contract prevent his employee

from using the skill and intelligence acquired or increased
and improved through experience or through instruction
received in the course of the employment. The employee
may achieve superiority in his particular department by every
lawful means at hand, and then, upon the rightful termina-
tion of his contract for service, use that superiority for the
benefit of rivals in trade of his former employer. As was
said in *Herbert Morris, Ltd.* v. *Saxelby,* [1916] 1 A. C. 688,
at page 714, "a man's aptitudes, his skill, his dexterity, his
manual or mental ability . . . ought not to be relinquished
by a servant; they are not his master's property; they are his
own property; they are himself. There is no public interest
which compels the rendering of those things dormant or
sterile or unavailing; on the contrary, the right to use and
expand his powers is advantageous to every citizen, and may
be highly so for the country at large." *Mason* v. *Provident
Clothing & Supply Co. Ltd.* [1913] A. C. 724. *Hepworth
Manuf. Co. Ltd.* v. *Ryott,* [1920] 1 Ch. 1.

The bill contains no allegations fairly susceptible of the
interpretation that the plaintiff had special proprietary rights
in the method or plan employed by it in marketing its prod-
uct. Of course the plaintiff is entitled to protection against
unlawful interference by others with the conduct of its busi-
ness. But this complaint is not of that nature. The plan
described in the bill was not used by the plaintiff alone. It
was not hidden from others. It was openly practised both
by the plaintiff and at least three of its competitors in busi-
ness. There are no allegations to the effect that the training
given by the plaintiff to Young was based upon secrets pos-
sessed by the plaintiff to the exclusion of others. "Highly
specialized training and personal supervision" in connection
with the sales of ordinary merchandise well known in the
market, alleged to have been given by the plaintiff to all its
salesmen, are statements too general in nature to constitute
ground for legal relief. The specifications of the bill go no
further than similar indefinite and magniloquent descrip-
tions. *Boston* v. *Treasurer & Receiver General,* 237 Mass.
403, 415. The averments of the bill in the main describe
such supervision and instruction of salesmen as manufac-

turers exercising business sagacity in the plaintiff's line of business well might use in substance, if not in detail. They constitute the usual solicitude and effort to promote sales and to make the business successful. They do not go beyond that. The specific enforcement of a restrictive agreement of the kind here disclosed would leave nothing but a shadow of the general rule against the validity of restrictive covenants upon individual liberty of action as to one's trade or calling, and would establish in its stead what has hitherto been treated as an exception. It is difficult to conceive of any ordinary employment which could not be cleverly clothed in broad language as special and peculiar as that employed in the contract here in issue.

The allegations of the bill do not show interference with the good will of the plaintiff's business. Whatever may be the signification of good will in different connections, there is nothing in the present record to establish derogation of the good will of the plaintiff's business by acts of the defendant Young. *Martin* v. *Jablonski*, 253 Mass. 451, 456, 457.

The grounds upon which this opinion rests are equally applicable to both cases, notwithstanding the differences between allegations of the bills.

In each case the entry may be

*Decree affirmed with costs.*