## McCLUER v. SUPER MAID COOK–WARE CORPORATION. *
### No. 551.

Circuit Court of Appeals, Tenth Circuit.
Dec. 23, 1932.

*Rehearing denied February 23, 1933.

A. L. Quant, of Kansas City, Mo. (Maurice H. Winger, Leland Hazard, and Joseph T. Owens, all of Kansas City, Mo., on the brief), for appellant.

Samuel J. Andalman, of Chicago, Ill. (Harkless & Histed and Elmer B. Silvers, all of Kansas City, Mo., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

This appeal presents for our consideration the action of the District Court in overruling appellant's demurrer to the bill and entry of final decree thereon, appellant having declined to answer. The Super Maid Cook-Ware Corporation, plaintiff below, an Illinois corporation, and Miller Maid Cookware Company, a Kansas corporation, were engaged in selling aluminum ware suitable for use as cooking utensils directly to housewives. The gravamen of the bill is that the latter company induced representatives of the former to break their written contracts with appellee and accept immediate employment with appellant in the sale and distribution of its aluminum ware in violation of restrictive covenants in said agreement, of which appellant had knowledge. There are two restrictions, (1) That the person contracting with plaintiff would not for one year after the termination of the contract, for himself or anyone else, sell or solicit the purchase of aluminum cookware in any city or community in which he had operated under the contract with plaintiff nor within a radius of one hundred miles of such city or community; and (2) That he would not within said one year engage in the business of selling such ware directly to the consumer within the United States.

The decree enjoined appellant from violating the terms of the first restriction and further that it should not continue in its employ two named persons whom the bill alleged had been induced by appellant to quit as appellee's representatives and become engaged by appellant in the sale and distribution of its aluminum ware.

The contract (labeled "Representative's Rental Agreement") is so indefinite in statement and so unusual in form and substance as to leave doubt as to the real relation of the parties. Throughout appellee is spoken of as "lessor" and the other party to the contract as "lessee." There are intimations that appellee manufactures its ware and that lessees might learn the secrets of that art, but this is contrary to the allegations of the bill. The contract begins with the statement that in consideration that lessee will keep and perform the agreement the lessor leases to the lessee one complete aluminum outfit consisting of named articles. It provides that lessee shall pay as rental five dollars per month for twenty-four months. It seems clear that the purpose of leasing the aluminum outfit was to enable the lessee to make demonstrations of its use in cooking, but that is nowhere expressly stated. The contract provides that the "lessor shall not be liable for any damage occasioned by the said lessee in and about the use of said outfit or any part thereof or any demonstration made by said lessee, and it being understood and agreed that the said lessee is acting for and on his own behalf in all matter pertaining to the use thereof or any part thereof or any demonstration made with the same or any part thereof." It further provides that if the lessee will faithfully "carry out the orders and directions of the lessor from time to time as indicated by its various rules and regulations, then for the time spent by lessee in school run by lessor in learning the art of selling aluminum cookware, the lessor will pay to the lessee the sum of $35.00 as, if and when the lessee subsequently shall have secured $1,000.00 in bona fide contracts for Super Maid aluminum ware which have been accepted by the said lessor, said sum to be paid directly from the home office of lessor. Besides this, for all bona fide contracts secured by lessee for the purchase of lessor's aluminum ware (and which contracts are accepted by lessor), the lessor will pay to the lessee a sum equal to the rate published by the said lessor from time to time." The lessee agreed to immediately surrender the outfit whenever he should cease selling aluminum ware made by lessor or whenever requested to so surrender the same by the lessor, and if he failed to surrender the same, it was agreed that lessee should be liable to lessor at the rate of $5.00 per day as liquidated damages. The lessee further agreed that when he stopped selling lessor's ware an action of trover for the aluminum outfit would lie against him whether demand was made for it or not. The lessee further agreed to insure the safe return of the outfit and every part thereof and that he would be held to strict liability for its value; that in the event lessee made default in payments reserved it would be lawful for the lessor to declare the lease ended and to demand and receive back the aluminum outfit, and for the purpose of its recovery the lessee constituted any

attorney of any court of record as his attorney with authority to enter the lessee's appearance, to waive process and service, trial by jury and to confess judgment against the lessee in favor of the lessor in any court upon complaint filed therein by lessor, and waive all errors and rights of appeal from the judgment, and consent that execution might be issued; that if the lessee faithfully complied with the contract the lessor would execute and deliver to the lessee a gift certificate of the aluminum outfit leased to him, and after the delivery of the certificate the outfit would belong to the lessee, and not until then; that the lessor was not to return any of the rentals at any time. It was further agreed that the lessee was unacquainted with the art and finesse of successfully selling aluminum cookware, and that the lessor would permit the lessee to attend its school of instructions where the lessor would give him detailed information as to the art of cooking with aluminum ware and at which lessee would learn its general policies in securing sales, and how to approach prospective customers and the art of cultivating their acquaintance. The nineteenth paragraph states that because of the relation established by the contract between lessor and lessee the lessee is about to become vested by the lessor with confidential information of great value in conducting the business of manufacturing and selling aluminum cookware directly to the consumer, that this information has cost the lessor hundreds of thousands of dollars and the proper education of the lessee is about to cost the lessor a considerable sum of money, and that by reason of the contract the lessee will also become acquainted with a large number of persons in various cities throughout the United States with whom he would not be able to get acquainted except for this agreement. The twenty-first and twenty-second paragraphs contain the restrictive covenants.

Notwithstanding the alluring intimations in the contract that the lessor was a manufacturer of aluminum ware and the lessee would in some way learn the art of its manufacture, and further alluring intimations that the lessor ran a school in which the art of manufacturing and selling aluminum cookware was taught and the lessor would pay each lessee $35.00 on the first $1,000.00 in contracts which he might obtain for selling aluminum ware, there is no allegation in the bill that the lessor is a manufacturer of aluminum ware and no allegation that it maintains a school of instructions of any kind. As to the first, it is alleged that appellee, the

so-called lessor, was authorized on its incorporation and immediately thereafter commenced the business of the purchase and sale of aluminum cookware, and that it has prosecuted said business ever since,—but there are no allegations of manufacture, nor that lessees were taught that art. As to the second, it is alleged that upon the execution of said rental agreement the lessee was given thorough and complete detailed instructions as to the use of the cookware and the preparation of food, etc.; and that after he had been fully instructed in said school of instructions, etc.,—no allegation that it maintains a school or employs instructors, nor where the school is situated, nor the length of time that the lessee is required to attend to earn said $35.00. It will also be observed that the contract does not provide that the aluminum outfit, which the lessor leases, shall become the property of the lessee when he has paid all of the rental. The contract only provides that if the lessee shall faithfully comply with the provisions of the agreement, then the lessor will issue to him the gift certificate. In that respect it might easily be illusive to one seeking employment. Nor can the lessee know from the contract what the lessor will pay him for services in selling aluminum ware, because the contract says "the lessor will pay to the lessee a sum equal to the rate published by the said lessor from time to time." Nor is there any time fixed in the contract as to how long the lessee will remain such, for it provides: "The said lessee agrees to immediately surrender the said outfit whenever the said lessee shall cease selling the aluminum ware made by the said lessor, or whenever requested to so surrender the same by the said lessor." In short, there is no definite obligation assumed by the lessor under the contract, which renders it inequitable and unfair to lessees; and yet the lessor is here in equity, a court of conscience, asking that the contract be upheld and enforced against lessees as to its restrictive covenants. In another suit brought by this appellee against lessees for the purpose of enforcing against them the restrictive covenants (Super Maid Cook-Ware Corporation v. Hamil et al., 50 F.(2d) 830) the Court of Appeals for the Fifth Circuit held that the so-called contract denominated "Rental Agreement" was so harsh, unjust and unreasonable on its face that it presented nothing for a court of equity to enforce, and particularly the negative covenants restricting them from accepting other employment. With this we fully agree. The Supreme Court of Massachusetts reached the same conclusion in

a like case entitled Club Aluminum Co. v. Young, 263 Mass. 223, 160 N. E. 804. See, also, Menter Co. v. Brock, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857.

Restrictive covenants of this character are prima facie void as in restraint of trade. There are exceptions, usually applied to the sale of an established mercantile business and its good will, or like sales of an established trade or profession and their good will, and those of actors and artists possessing unusual accomplishments as such, who bind themselves to give performances for a specified time and at a specified place. Such restrictions are rarely recognized as of equitable cognizance where the employment is of an ordinary kind. The remedy of the employer, if any, is considered adequate at law. Aluminum cookware is a general article of commerce throughout the country found in many retail stores, and notwithstanding some of the allegations of the bill its sale or demonstration of its use requires no extraordinary skill or ability. Anyone of ordinary intelligence, after slight experience and instruction, is as competent as another. When an employee in that service quits, his place can be supplied at little effort and expense, and the damages, if any, can be easily ascertained in a law action. For this reason the New Jersey Court of Chancery in Sternberg v. O'Brien, 48 N. J. Eq. 370, 22 A. 348, denied equitable relief. There the employer was engaged in selling clothing on the installment plan, and his employee was collector of the installments. For the reasons stated, the bill in that case was dismissed. See, also, Samuel Stores, Inc., v. Abrams, 94 Conn. 248, 108 A. 541, 9 A. L. R. 1450. In that case the defendant's engagement was as manager of one of plaintiff's stores. The restrictive covenant was like the one in this case, that the employee would not engage in a competing business for a stated time. Equitable relief to enforce the restrictive covenant was denied.

In this case the lessor was free to terminate the contract at any time by a mere request that the lessee surrender the aluminum outfit, and the lessee was free to quit at any time by ceasing to sell the lessor's aluminum ware. "Nobody has ever thought, so far as we can find, that in the absence of some monopolistic purpose every one has not the right to offer better terms to another's employee, so long as the latter is free to leave." Triangle Film Corporation v. Artcraft Pictures Corporation (C. C. A. 2) 250 F. 981, 982.

A good consideration is required to sustain a covenant in restraint of trade. No specific consideration is named for the restrictive covenants in this case, and in view of what has been said about the contracts we find none in it. Oregon Steam Nav. Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315; Anson on Contracts (2d Am. Ed.) p. 248; Chitty on Contracts (11th Am. Ed.) Vol. II, p. 984; Bishop on Contracts (Enlarged Ed.) §§ 126, 516. Where an established mercantile business or professional practice and its good will is sold, the latter is a valuable consideration in support of the restriction.

The court erred in overruling the demurrer to the bill for another reason. The decree enjoins appellant from continuing in its employ Fry and Bozeman, who previously had been appellee's lessees, but were at the time the bill was filed in the employ of appellant. It was, therefore, mandatory under the decree that appellant should discharge Fry and Bozeman. They were interested in the result of this litigation,—perhaps more so than appellant, but they were not made parties in this cause. They were entitled to be heard before their rights were adjudicated in this suit, and were thus indispensable parties, and the demurrer was well taken on that ground.

We have not overlooked other contentions in support of the bill, but in view of what has been said we find it unnecessary to consider them.

After this appeal was taken, appellant was adjudged bankrupt, and appellee here moves that the appeal be dismissed without considering the issues on the ground that they are now moot. But a temporary injunction was issued against appellant and bond given by appellee conditioned that it would "pay to the party injured all damages which it might sustain by reason of said restraining order, including reasonable attorneys' fees, if it should be finally determined that said restraining order ought not to have been granted." The trustee in bankruptcy claims that he is entitled to recover on said bond such damages for the benefit of the bankrupt estate. Motion to dismiss denied.

We find no merit in the case. The court erred in not sustaining the demurrer to the bill. Decree reversed with directions to vacate the decree and the order overruling the demurrer, and to enter an order sustaining it and an order of dismissal.

COTTERAL, Circuit Judge (dissenting).

The averments of the plaintiff's bill are that the defendant has copied its plan of conducting business and plagiarized its form of rental agreement with its agents and its methods of advertising its business; that defendant and its agents procured plaintiff's agents, after being educated by plaintiff in the art of using aluminum cook ware and selling it, to quit its employment and take employment with defendant; that the acts of said agents were violative of their contracts with plaintiff and were deliberately instituted to destroy plaintiff's business and its established good will and to appropriate unfairly its profits and its methods of conducting business. Averments are added, showing the want of an adequate remedy at law.

In my opinion, the bill states a case for relief. It is founded on the principle that the good will of an established business will be protected by injunction to the extent of preventing the agents of the owner from breaking their contracts and taking competitive employment. That principle is settled by the authorities. Wark v. Ervin Press Corporation (C. C. A.) 48 F.(2d) 152. It is not in conflict with the principle that mere employment of an agent by another may not be restricted by contract. Super Maid Cook-Ware Corporation v. Hamil (C. C. A.) 50 F.(2d) 830.

Entertaining this view, I think the District Court was right in overruling the motion to dismiss the bill and referring the case to a master.