NATIONAL HEARING AID CENTERS, INC. vs. LEONARD
AVERS.

Suffolk. April 12, 1973. — May 23, 1974.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Contract*, Validity, Agreement not to compete, Contract of employ-
ment, Provision for liquidated damages. *Equity Jurisdiction*,
Agreement not to compete. *Good Will*. *Words*, "Good Will."

Where, in a suit in equity against a former employee of the plaintiff
to enforce a covenant against competition by the defendant in the
employment contract between the parties, a decree was entered
enjoining certain business activities of the defendant for a specified
period and also awarding liquidated damages as provided in the
contract, and it appeared that the period of the injunction
specified in the decree had expired before the time of this court's
decision on appeal from the decree, the validity of the restrictive
covenant as enforced in the circumstances was still open on the
appeal since dependent on such validity was the validity of the
award of liquidated damages. [289-291]

In a suit in equity by a plaintiff engaged in the sale of hearing aids
against a former employee to enforce a covenant by the defendant
that after termination of his employment by the plaintiff he would
not sell hearing aids in a certain area for a specified time, the bill
must be dismissed where it appeared that, although the defendant
in the restricted area and time sold hearing aids of a different
brand from those sold by the plaintiff and used merchandising
techniques like those of the plaintiff, he did not use to the detri-
ment of the plaintiff confidential information acquired during his
employment by the plaintiff, nor, in view of the fact that "repeat"
sales of hearing aids were not made, did he interfere with the
plaintiff's good will through exploitation of customer contacts
made during such employment. [291-293]

BILL IN EQUITY filed in the Superior Court on October
7, 1969.

The suit was heard by *Lurie*, J., upon a master's
report.

*Robert A. Mulligan* for the defendant.

*M. Frederick Pritzker* for the plaintiff.

GOODMAN, J.   The defendant appeals from a final decree which enjoined him from engaging in the sale of hearing aids and hearing aid accessories in four counties in Massachusetts and in the States of Maine and New Hampshire and which awarded the plaintiff liquidated damages of $5,000.   That decree was entered on the basis of the master's report in which the master found that the plaintiff was "entitled to protection against interference in its business relations by the [defendant] . . . by reason of the restrictive covenant agreement . . .."   The case was heard under the usual order of reference requiring the master to find the subsidiary facts on each issue and to report them and his findings based on the subsidiary findings.   Rule 86 of the Superior Court, as amended effective July 1, 1961.   Under such an order of reference we draw our own inferences from the subsidiary findings and reach our own conclusions.   *Corrigan* v. *O'Brien,* 353 Mass. 341, 345-346 (1967).   See *Marine Contractors Co. Inc.* v. *Hurley,* 365 Mass. 280, 282 (1974).

We summarize the facts in the master's report.   The plaintiff holds a franchise from a company in Minnesota for the sale of hearing aids and hearing aid accessories. It sells hearing aids only under two brand names which are variants of the name of its Minnesota franchisor.   It also sells some audiometers and batteries.   Its territory is eastern Massachusetts, Maine, New Hampshire, and Vermont, and it has offices in Boston; Manchester, New Hampshire; and Portland, Maine.   It advertises in local newspapers and magazines and solicits through direct mail and leads supplied by a company the name of which indicates an affiliation with the franchisor and which was the plaintiff's prime customer supplier.   The plaintiff also used a promotional give-away program which involved telephone amplifier attachments designed to induce potential customers to contact the plaintiff.   There are

about 200 other vendors of hearing aids in the area and about 25 different brands. They are, as the master found, "general article[s] of commerce and sold through many specialty stores . . .. The business is a type where only one sale would be made to a customer rather than the repeated sale as in other type products."

On November 8, 1968, the defendant, who had owned and operated a discount house and who had done some selling, but not of hearing aids, signed an employment contract with the plaintiff to sell the plaintiff's "hearing aids and other related products." The defendant was to be compensated on a commission basis, and the employment was terminable by either party on seven days' written notice. As the master's report put it, the sale or demonstration of hearing aids "does not require extraordinary skill or experience. One of slight experience, can learn and be replaced at not too much expense."

The employment contract included a covenant against disclosure of the plaintiff's customer list and a restrictive covenant which provided generally that the defendant would not, for two years after the termination of the contract, sell "hearing aids or hearing aid accessories" in Maine, New Hampshire, Vermont, or six counties in Massachusetts. The contract also provided for liquidated damages of $5,000 for "any . . . breach" of the nondisclosure clause or the restrictive covenant and that "[i]n addition . . . in the event of a breach or threatened breach by the Employee [of the nondisclosure clause or the restrictive covenant] . . . the Employer shall be entitled to an injunction restraining the Employee . . .." The defendant was employed under that contract until March 28, 1969; on that date he voluntarily terminated his employment and formed a corporation[1] with another former employee of the plaintiff in Providence, Rhode

---

[1] The restrictive covenant applies to the defendant individually and any corporation through which he might operate; we make no distinction in this regard.

Island, for the purpose of selling hearing aids. At first the defendant sold primarily in Rhode Island, but in August of 1969 he transferred his activities to Massachusetts, and sales were made in territory restricted under the covenant. The defendant advertised in Boston and Maine newspapers and used "the same advertising gimmick" as the plaintiff, offering a free telephone amplifier to those who sent in a coupon in Massachusetts and a free TV listening device to Maine residents who sent in a coupon. The defendant did not sell the same brands of hearing aids as either of those sold by the plaintiff.

The plaintiff brought a bill in equity on October 7, 1969, to enforce the restrictive covenant, for liquidated damages, and for other relief. A preliminary injunction was denied; and the final decree, from which this appeal was taken, was entered on October 7, 1970. The injunction in the decree expired on March 28, 1971, two years from the termination of the employment agreement, but the question of the validity of the restrictive covenant (as cut down by the Superior Court) is not moot since the provision for liquidated damages, which the court awarded is enforceable only if the circumstances of this case are such that the plaintiff has sustained the burden of justifying as reasonable the imposition of any restraint on competition. *Taylor* v. *Blanchard,* 13 Allen 370, 373 (1866). *Sherman* v. *Pfefferkorn,* 241 Mass. 468 (1922). *Club Aluminum Co.* v. *Young,* 263 Mass. 223 (1928). We hold that it has not.[2]

The Supreme Judicial Court has very recently had occasion to survey this area of the law and the welter of cases, many of which cannot be easily (if at all) related

---

[2] Our disposition of this issue makes it unnecessary to consider whether a liquidated damages provision is enforceable as a "reasonable forecast of damages" (*Wilson* v. *Clarke,* 470 F. 2d 1218, 1223 [1st Cir. 1972]) if, as in this case, it imposes a flat $5,000 award (1) for "any . . . breach" (Corbin, Contracts [1964] § 1066, pp. 382-383, § 1071, pp. 400-401; *Smith* v. *Brown,* 164 Mass. 584, 587 [1895]; *McMurray* v. *Faust,* 224 Iowa 50, 59 [1937]) and (2) in addition to

to one another. *All Stainless, Inc.* v. *Colby,* 364 Mass.
773, 780-781 (1974). *Marine Contractors Co. Inc.* v.
*Hurley,* 365 Mass. 280, 287-290 (1974). In the *All Stain-
less* case the court limited the restriction which it would
enforce, whether by injunction or by an award of
damages, to the territory in which the employee had
actually had contact with the employer's customers and
was therefore in a position to interfere with the estab-
lished relations between the employer and those custo-
mers. The court said (pp. 779-780), "A former employer
is not entitled by contract to restrain ordinary competi-
tion. *Club Aluminum Co.* v. *Young,* 263 Mass. 223,
226-227 (1928). *Richmond Bros. Inc.* v. *Westinghouse
Bdcst. Co. Inc.* 357 Mass. 106, 111 (1970). Any restraint
must be consistent with the protection of the good will of
the employer. The former employee must be in a posi-
tion where he can harm that good will, perhaps . . .
because of his knowledge of some business secret or con-
fidential information (see *Club Aluminum Co.* v.
*Young, supra,* 226; *Slade Gorton & Co. Inc.* v. *O'Neil,*
355 Mass. 4, 10 [1968]) or perhaps . . . because the
former employee's close association with the employer's
customers may cause those customers to associate the
former employee, and not the employer, with products of
the type sold to the customer through the efforts of the
former employee. See Blake, Employee Agreements not
to Compete, 73 Harv. L. Rev. 625, 658-659 (1960)." See
*Purchasing Assn.* v. *Weitz,* 13 N. Y. 2d 267, 272 (1963).
Neither of the factors mentioned in the *All Stainless* case
and reiterated in the *Marine Contractors* case is present
in this case. The master's report yields no basis for a

---

injunctive relief, which the plaintiff had sought and obtained (*Shute*
v. *Taylor,* 5 Met. 61 [1842]; *Ropes* v. *Upton,* 125 Mass. 258, 262
[1878]; *Wirth & Hamid Fair Booking, Inc.* v. *Wirth,* 265 N. Y. 214,
221-225 [1934]; *Karpinski* v. *Ingrasci,* 28 N. Y. 2d 45, 52-53 [1971];
*Heinz* v. *Roberts,* 135 Iowa 748, 753 [1907]; Corbin, Contracts
[1964] § 1213, pp. 433-434). Compare Restatement: Contracts
§ 378, comment b, p. 701.

conclusion that the defendant, as a result of his employment, was placed in a position to injure "[s]uch legitimate business interests . . . [as] trade secrets, other confidential information, or . . . the good will the employer has acquired through dealings with his customers." *Marine Contractors Co. Inc.* v. *Hurley*, 365 Mass. 280, 287 (1974).

No confidential information, used by the defendant to the plaintiff's detriment, would appear to be involved in this case. The contract does indeed declare that the defendant "recognizes and acknowledges that the list of the Employer's customers . . . is a valuable, special and unique asset" which the defendant agrees not to disclose, but the master's report is bare of any mention of such a list and there is nothing to indicate that the defendant has in any way appropriated or used in his business any confidential customer information belonging to the plaintiff. *American Window Cleaning Co. of Springfield* v. *Cohen*, 343 Mass. 195, 199 (1961), and cases cited. See *Abramson* v. *Blackman*, 340 Mass. 714, 715-716 (1960). The plaintiff also complains that the defendant used "sales techniques" learned while in the plaintiff's employ, and the master found that the defendant used the "same advertising gimmick" that the plaintiff had used. But that "gimmick" was, so far as appears, nothing but a publicized give-away program using coupons printed in newspapers. It was not confidential, nor indeed was it treated as confidential by the parties. It is significant that the contract makes no mention of it, or anything other than the customer list, in the "Disclosure of Information" clause. *Jet Spray Cooler, Inc.* v. *Crampton*, 361 Mass. 835, 841 (1972). Involved in this case is nothing more than a merchandising technique, in which the plaintiff has no proprietary interest. *Club Aluminum Co.* v. *Young*, 263 Mass. 223 (1928). *Associated Perfumers, Inc.* v. *Andelman*, 316 Mass. 176, 185 (1944). *United Tool & Industrial Supply Co. Inc.* v. *Torrisi*, 356 Mass. 103, 106 (1969).

Contrast *New England Overall Co. Inc.* v. *Woltman,* 343 Mass. 69, 77 (1961); *Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714, 715 (1961). From "the conduct of the parties and the nature of the information" (the *Jet Spray Cooler* case, *supra,* at 840), it is clear that there has been no use by the defendant of confidential information sufficient to provide a justification for the non-competitive covenant.

The other factor mentioned in the *All Stainless* and *Marine Contractors* cases as a basis for a valid non-competition agreement is interference with the employer's good will through solicitation of his customers. The plaintiff complains of a "grave encroachment upon National's good will," but uses that term unqualifiedly. So used it would appear to mean nothing less than the capacity of a business to make money (measured as it is in some contexts by past earnings). A threat to good will, as used in that sense, is posed by ordinary competition which an employment contract cannot validly restrain. *Club Aluminum Co.* v. *Young,* 263 Mass. 223, 227 (1928). The reference in the *All Stainless* case to good will which would be protected by an employment contract is such as "could be harmed by a former salesman's calling on an All Stainless customer, with whom he had previously dealt, to solicit purchases on behalf of a new employer." *All Stainless, Inc.* v. *Colby,* 364 Mass. 773, 777 (1974). See pp. 779-780, quoted above. See also *Slate Co.* v. *Bikash,* 343 Mass. 172, 175-176 (1961). But the defendant's employment did not put him in a position to exploit customer contacts made while employed by the plaintiff, for the master found that only one sale would be made to a customer, rather than repeated sales. See Blake, Employee Agreements not to Compete, 73 Harv. L. Rev. 625, 659 (1960) (cited in the *All Stainless* case at p. 780) where the point is made that "[w]hen the commodity being sold is such that there are apt to be no 'repeat' sales, such as residential real estate, or if sales are normally highly infrequent, as is true with

major household appliances, a restraint may not be justifiable." The master's finding would explain the absence of any indication in his report that the defendant solicited former customers, a fact usually found in cases of this sort. *Southern New England Ice Co.* v. *Ferrero,* 295 Mass. 446, 449 (1936). *New England Tree Expert Co. Inc.* v. *Russell,* 306 Mass. 504, 508 (1940). *Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714, 715 (1961). But see *Cedric G. Chase Photographic Labs. Inc.* v. *Hennessey,* 327 Mass. 137, 140 (1951); *Walker Coal & Ice Co.* v. *Westerman,* 263 Mass. 235, 239 (1928).

The plaintiff invites us to speculate on the possibility that the defendant might undertake to service equipment sold to former customers, with whom the defendant had dealt while working for the plaintiff, and might sell them audiometers (not mentioned in the decree at all) and batteries and other accessories. However, there is nothing in the master's report to indicate that the defendant is engaged in any activity except the sale of hearing aids. We do not even know whether it is practical for the defendant to service former customers or sell them accessories since, as the master found, the defendant does not sell hearing aids of the same brand as either of those sold by the plaintiff.

The formulation in the *All Stainless* and *Marine Contractors* cases recognizes that there may be other factors which bear on whether the restriction of competition is reasonable or unreasonable in the circumstances. See the *All Stainless* case, *supra,* at 780-781. We find no such other factor in this case. The most that can be said is that the defendant, as a result of his employment, gained a certain amount of experience (here only about five months) and some skill (which the master found was not difficult to acquire). These may have made him a more efficient competitor, but they cannot (consistent with the value accorded by our culture to upward mobility) be contracted away by a noncompetition agreement. "[A]n employer cannot by contract prevent his employee from

using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment. The employee may achieve superiority in his particular department by every lawful means at hand, and then, upon the rightful termination of his contract for service, use that superiority for the benefit of rivals in trade of his former employer." *Club Aluminum Co.* v. *Young,* 263 Mass. 223, 226-227 (1928). *Slade Gorton & Co. Inc.* v. *O'Neil,* 355 Mass. 4, 9-10 (1968). *Richmond Bros. Inc.* v. *Westinghouse Bdcst. Co. Inc.* 357 Mass. 106, 111 (1970). *Wilson* v. *Clarke,* 470 F. 2d 1218, 1222 (1st Cir. 1972).

The final decree is reversed; a new final decree is to be entered dismissing the bill in equity with costs of this appeal to the defendant.

*So ordered.*