Muse, J.
On November 1,2004, plaintiff WordWave, Inc. d/b/a LegaLink Corporation (“LegaLink”) filed this action against defendants Dalia Owens (“Owens”) and Jones Reporting Company, Inc. (“Jones”) alleging intentional interference with business relations, breach of contract, violation of G.L.c. 93A, and breach of fiduciary duty. This matter now comes before the court on plaintiffs motion for a preliminary injunction pursuant to Mass.RCiv.P. 65(b) to enforce restrictive covenants, to order the defendants to return LegaLink’s property, and to order the defendants’ certification of their conformity with this order. For the reasons discussed below, the plaintiffs motion for a preliminary injunction is ALLOWED as to Owens’ solicitation of LegaLink’s clients and court reporters and DENIED on all other requests.

*38
BACKGROUND

In 1983 Owens began working for a court reporting company that later became Fritz & Sheehan (“F&S”). By the time LegaLink acquired F&S in 1998, Owens was responsible foradministrative tasks and scheduling court reporters.[2] Owens’ employment agreement of April 3, 1993 (the “Agreement”) was one of four closing documents in LegaLink’s purchase of F&S. The Agreement provided for Owens’ employment with LegaLink at an annual salary of $73,000 and allotted Owens 10,000 LegaLink shares, The Agreement contained three restrictive covenants, specifically, a non-competition, a non-disclosure, and a non-solicitation covenant.
During her employment, Owens learned the identities, special needs, and rates of LegaLink’s clientele. At the time Owens resigned from LegaLink on July 2, 2004, she was 61 years old and had over 30 years experience in the competitive court reporting industry. On September 9, 2004, Owens began working for Jones in an administrative capacity. Following Owens’ resignation from LegaLink, nine of LegaLink’s pool of approximately 30 court reporters began working almost exclusively with Jones.

DISCUSSION

A preliminary injunction is appropriate where the moving party has demonstrated: (1) its likelihood of success on the merits; (2) the irreparable harm it will suffer if the injunction is not issued; and (3) that the anticipated harm outweighs the burden imposed upon the party against whom the injunction issues. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980); Westinghouse Broadcasting Co., Inc. v. New England Patriots Football Club, Inc, 10 Mass.App.Ct. 70, 72(1980). The issuance of a preliminary injunction is within the sound discretion of the court. T&D Video, Inc. v. Revere, 423 Mass. 577, 580 (1996).

I. Likelihood of Success on the Merits

A. Whether the Agreement Arose Between Seller/Buyer or Employer/Employee
Whereas courts carefully scrutinize restrictive covenants arising from an employment relationship, a more liberal standard applies to restrictive covenants arising from the sale of a business. Alexander v. Alexander, 21 Mass.App.Ct. 488, 496 (1986). Consequently, in assessing the likelihood of LegaLink’s success at trial, this court must first determine the applicable standard of review. The plaintiff claims that the restrictive covenants arose from the sale of a business and urges the court to apply a liberal standard of review. After careful consideration of the facts of this case and the policy behind the more liberal standard, this court finds that the restrictive covenants arose from Owens’ employment relationship with LegaLink, not LegaLink’s purchase of F&S.
Courts look “less critically” at restrictive covenants arising from the sale of a business because, unlike employers and employees, buyers and sellers are likely to be similarly-situated, with equal bargaining power and often times the benefit of counsel. Boulanger v. Dunkin’ Donuts Inc., 442 Mass 635, 640 (2004); Alexander, 21 Mass. at 496-97. The buyer’s right to the benefit of the bargain, the utility of restrictive covenants in the context of the sale of a business, and the sale proceeds which may compensate for the seller’s restricted employment are additional policy considerations meriting a more liberal review. See id.
LegaLink has not established that the restrictive covenants in this case arose from the sale of a business. Though Owens’ future employment may have been a consideration in the purchase and sale of F&S, there is no evidence that Owens had any ownership interest in F&S or any control over its sale, and therefore this case does not warrant an inference of the parties’ equal bargaining power. Additionally, LegaLink did not establish the market value, if any, of the stock Owens received in the purchase and sale of F&S. Thus, it cannot be said that Owens received an “ample cushion” to compensate for restricting her employment. Compare Alexander, 21 Mass.App.Ct. at 497 (president and principal shareholder received an “ample cushion” of $1.5 million to compensate for restricted employment). Accordingly, this court assesses the plaintiffs likely success on the merits by treating the restrictive covenants as arising from an employment relationship rather than the sale of a business.

B. Whether LegaLink Has Established the Enforceability of the Restrictive Covenants Arising From an Employment Relationship

Concerns over unequal bargaining power, one’s right to employment, and the need to earn a living compel the law’s disfavorable view of restrictive covenants arising from an employment relationship. Kroeger v. Stop & Shop Companies, Inc., 13 Mass.App.Ct. 310, 312 (1982) (“reluctance to give full effect to post-employment restraints has a long history in the law”). Under this stringent standard, a party seeking to enforce a restrictive covenant must establish that the covenant is: (1) necessary to protect an employer’s legitimate business interest; (2) reasonably limited in time and space; (3) consistent with public policy; and (4) supported by reasonable consideration. All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974); IKON Office Solutions, Inc. v. Belanger, 59 F.Sup.2d 125, 131 n.2 (D.Mass. 1999). This factual determination must be made on a case-by-case basis. Thomas v. Parker, 327 Mass. 339, 341 (1951).
In determining the enforceability of the restrictive covenants, the court considers the non-solicitation, non-disclosure, and non-compete covenants separately.

*39
1.The Non-Solicitation Covenant

Massachusetts law limits legitimate business interests to good will, confidential information, or trade secrets.[3] See Folsum Funeral Services, Inc. v. Rodgers, 6 Mass.App.Ct. 843 (1978); Kroeger, 13 Mass.App.Ct. at 316. With respect to good will, a former employee must have had customer contact and the ability to harm the employer’s good will. See National Hearing Aid Centers, Inc. v. Avers, 2 Mass.App.Ct. 285, 289 (1974). An ability to harm the employer’s good will may derive from knowledge of confidential information or contact with clients who may associate the former employee, rather than the employer, with the quality of goods sold or services rendered. Id. at 289.
Here, LegaLink’s interests in good will and confidential information coalesce into a legitimate business interest protected by the non-solicitation covenant. See New England Overall Co., Inc. v. Woltzman, 343 Mass. 69, 77 (1961); see Kroeger, 13 Mass.App.Ct. at 316. In Jet Spray Cooler, Inc. v. Crampton, the Supreme Judicial Court set forth factors to consider in assessing the confidentiality of information. 361 Mass. 835, 840 (1972). Although one could argue that these factors weigh against the confidentiality of the client information at issue in this case, a court may likely find that given the competitive nature of the court reporting industy, LegaLink’s client lists and client preferences acquired over time are confidential. See New England Overall Co., Inc., 343 Mass. at 77.
Additionally, Owens had regular client contact and the opportunity to cultivate good will on LegaLink’s behalf. In their Agreement, the parties even acknowledge that Owens would be in such a position; the Agreement signed by Owens explicitly states, “you acknowledge that during your employment you will develop good will on behalf of the Company.” As to the contention that the restrictive covenants seek to appropriate Owens’ own good will, any “general knowledge, experience, memoiy and skill" Owens acquired is hers to keep. See Junker v. Plummer, 320 Mass. 76, 69 (1946). The specific client information which enhanced Owens’ ability to serve clients, however, belongs to LegaLink.[4] Consequently, this court finds that taken together, LegaLink’s interests in confidential information and good will constitute legitimate business interests.
The non-solicitation covenant’s substantive scope, as set forth in Section 3(c)(2) of the Agreement, is also reasonable. The covenant’s two-year term and limited application to clients and court reporters associated with LegaLink during Owens’ employment are narrowly-tailored and likely to be deemed reasonable at trial. See All Stainless, 364 Mass. at 774.
The non-solicitation covenant’s geographic scope of New England, however, is overly-broad.[5] LegaLink has not demonstrated how completely banning Owens’ employment in the industry, including administrative services devoid of client contact, would protect LegaLink’s interests in good will or confidential information.
Still, courts may nonetheless enforce overly-broad covenants to the extent reasonable and feasible. All Stainless, 364 Mass. at 773. In such cases, courts have “saved” covenants by decreasing their scope. Abramson v. Blackman, 340 Mass. 714, 716 (1960). Since the non-solicitation covenant is severable from the other restrictive covenants, its substantive scope is reasonable, and enforcement poses no significant hardship on Owens in light of her admission that she is not currently soliciting clients. LegaLink has established a substantial likelihood that the trial court will enforce the covenant. Consequently, this court deems it reasonable to prohibit Owens from soliciting the specified clients and court reporters within a 50-mile radius of LegaLink.
Owens’ employment with LegaLink and her $73,000 salary in exchange for her promise not to solicit LegaLink’s clients and court reporters constitute adequate consideration. See Sherman v. Pfekkerforn, 241 Mass. 468, 473 (1922). Accordingly, this court finds that LegaLink has met its burden of demonstrating a likelihood of success on the merits with respect to enforcement of the non-solicitation covenant.

2. The Non-Disclosure Covenant

Alternatively, LegaLink has not established that the nondisclosure covenant is necessary to protect a legitimate business interest. See Jet Spray Cooler, Inc., 361 Mass, at 835. Section 3(a) of the Agreement prevents Owens’ disclosure or use of any confidential information obtained during her employment at LegaLink. As discussed earlier, this court finds that the client information Owens obtained, standing alone, does not rise to the level of a protectable business interest. Therefore, LegaLink has not met its burden of establishing a likelihood of success on its claim to enforce the non-disclosure covenant.

3. The Non-Compete Covenant

There is not a likelihood of success of LegaLink prevailing on its claim to enforce the non-compete covenant because the covenant is unreasonably broad. Section 3(c)(i) of the Agreement prohibits Owens from working or providing services in the shorthand and court reporting industries in any capacity, with or without compensation throughout New England for two years following Owens’ employment at LegaLink.[6] As discussed earlier, the geographic scope encompassing states in which there is no evidence that Owens dealt with clients or court reporters is excessive. Additionally, LegaLink has not demonstrated how completely banning Owens’ employment in the industry, including administrative services devoid of client contact, would protect LegaLink’s interests in good will or confidential information. In light of the law’s hesitance to restrict one’s ability to earn a living, the non-compete covenant’s overly- *40 broad substantive and geographic scopes are likely to render the covenant unenforceable. See Kroeger, 13 Mass.App.Ct. at 312.

II. IRREPARABLE HARM AND A BALANCING OF THE EQUITIES

Given this court’s determination that the Agreement’s non-solicitation covenant is reasonable, a finding of Owens’ breach would be merited. See All Stainless, 364 Mass, at 781; see Alexander, 21 Mass.App.Ct. at 495. In addition, Janet Konarski’s affidavit testimony regarding Owens’ attempt to procure her services for Jones as opposed to LegaLink, presents evidence of Owens’ breach. The trial court may likely find that Owens in fact breached this covenant causing irreparable harm to LegaLink by way of enticing a court reporter utilized by LegaLink to work exclusively with Jones.
In balancing the equities, enforcing the non-solicitation covenant would protect and benefit LegaLink more than it would harm Owens. Again, Owens herself admits that she is not currently soliciting LegaLink’s clients or court reporters and that her job does not call for such solicitation. Accordingly, this court finds that LegaLink has established that a preliminaxy inj unction prohibiting Owens from soliciting its clients and court reporters is appropriate under the circumstances.

ORDER

For the foregoing reasons, it is hereby ORDERED that a preliminary injunction issue prohibiting the defendant Owens from soliciting plaintiffs clients and court reporters. Until July 2, 2006, Owens is enjoined from soliciting the plaintiffs clients existing during her employment with it, for the purpose of procuring their business for Jones Reporting Company, or any other court reporting service she may become associated with during the term of this injunction. Similarly, Owens is enjoined from contacting court reporters who had previously provided services to the plaintiff during her time of employment with it, for the purpose of procuring their services for J ones Reporting Company, or any other court reporting service she may become associated with during the term of this injunction. Contact between Owens and such clients and/or court reporters for non-prohibited administrative purposes shall not be a violation of this injunction. It is further ORDERED that the scope of this prohibition be limited to within a 50-mile radius of LegaLink’s principal downtown Boston office.

Common practice within the court reporting industry is for court reporting agencies to engage the services of court reporters as independent contractors rather than as employees.

Massachusetts courts have defined good will as a “benefit derived from reputation for promptness, fidelity and integrity with customers.” Kroeger, 13 Mass.App.Ct. at 316 (citing to Angier v. Webber, 14 Allen 211, 215 (1867)).

Compare American Window Cleaning Co. v. Cohen, 343 Mass. 195, 199 (1961) (discharged employee could utilize “remembered” information to solicit former employer’s clients) (emphasis added).

Mie Agreement defines New England as encompassing Maine, Massachusetts, New Hampshire, Rhode Island, Vermont, and part of Connecticut.

Mie Agreement defines New England as encompassing Maine, Massachusetts, New Hampshire, Rhode Island, Vermont, and part of Connecticut.