MacDonald, D. Lloyd, J.
Before the Court is the plaintiff John Edwards’ (“Edwards”) motion that the Court enjoin the enforcement of the non-compete provision of his employment agreement with the defendant Athena Capital Advisors, Inc. (“Athena”). For the reasons stated below, the Court ALLOWS the motion.

Pertinent Facts

Edwards was twenty-four years old in 2004 when he joined Athena. Athena is an investment management firm inhabiting a niche market catering to high net worth families. The number of its clients is small, but they bring to Athena substantial assets. As of the briefing of the instant matter, Athena had approximately $2.2 billion under management.
Edwards graduated from Boston College with a degree in economics in 2001. After working for several investment firms in the U.S. and Bermuda, he accepted an offer of employment with Athena as an “investment operations associate” in February 2004. He was promoted twice, first, to the position of “investment associate” in December 2004 and then to the position of senior financial analyst in June 2006.
At the time he joined Athena, Edwards was required to sign an employment contract styled, “Nondisclosure/Noncompete/Inventions Agreement.” It is the non-competition portion of the agreement that is at issue here. Edwards represented to the Court that he does not dispute the enforcement of the remaining terms of the agreement.
The present dispute arises from the circumstance that in May 2007 Edwards resigned from Athena with the intention to accept employment in the Private Wealth Management Division of Goldman Sachs (“Goldman”). A former colleague of Edwards at Athena had joined Goldman in March 2006. She had been subject to a non-compete agreement similar to Edwards,’ but Athena had released her from it when she went to work for Goldman. Edwards sought a similar release, but Athena refused. Goldman informed Edwards that he would be hired only if he, too, obtained a waiver from Athena. After he was unable to do so, this lawsuit ensued.
The complaint seeks a declaration that the non-compete provision is unenforceable and that a preliminary injunction issue pending final judgment.
The part of the agreement at issue is Section 3, entitled “Restricted Activities.” It states that “some restrictions on Employee’s activities during and after the term of Employee’s employment. .. are necessary to protect the goodwill, Confidential Information and other legitimate interests of the Company.” It provides that for one year after termination of employment, Edwards “shall not perform any services, either as a consultant, employee, owner, investor or otherwise, with or for any foreseeable business, product or service of the Company” (emphasis added). Although Athena is a fraction of the size of Goldman, Athena considers Goldman’s Private Wealth Management Division to be its primary competitor in the market of managing investments for high net worth families.

Standard of Review

To prevail on his motion for a preliminary injunction, Edwards must show a likelihood of success on the merits, that he will suffer irreparable harm if the injunction is not granted, and that his harm without the injunction is greater than any harm Athena might suffer if the injunction is issued. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). In balancing these factors, the court considers not so much “the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. at 617.

Principles as to the Enforcement of Non-Competition Agreements

Non-compete agreements are closely reviewed because an “employee typically has only his own labor or skills to sell and often is not in a position to bargain with his employer.” Alexander, Inc. v. Danahay, 21 Mass.App.Ct. 488, 496 (1986). Employee covenants not to compete “are scrutinized with particular care because they are often the product of unequal bargain *156 ing power and because the employee is likely to give scant attention to the hardship he may later suffer through the loss of his livelihood.” Sentry Ins. Co. v. Firnstein, 14 Mass.App.Ct. 706, 707 (1982).
A non-compete agreement is only enforceable to the extent necessary to protect the employer’s legitimate business interests. Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 716 (1961). And it must be reasonably limited in time and geography and not be harmful to the public interest. All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974). Covenants not to compete are valid if they are reasonable in view of all the facts in a particular case. See Marine Contractors. Co. v. Hurley, 365 Mass. 280, 287-88 (1974). A non-compete covenant which is too broad in any respect is enforceable “only to the extent that is reasonable and to the extent that it is severable for the purposes of enforcement.” All Stainless, 364 Mass. at 778.
Legitimate business interests may include trade secrets, confidential information or the good will the employer has developed over the course of its dealings with its customers. Id. at 778-80.
Protection from ordinary business competition, however, is not a legitimate business interest. Richmond Bros, Inc. v. Westinghouse Broadcast Co., Inc., 357 Mass. 106, 111 (1970). A covenant not to compete which is designed solely to protect the employer from competition is not enforceable. Marine Contractors, 365 Mass. at 287-88.
It is well-settled “that an employee upon terminating his employment may carry away and use the general skill or knowledge acquired during the course of the employment.” Dynamics Research Corp. v. Analytic Sciences Corp., 9 Mass.App.Ct. 254, 267 (1980), citing Junker v. Plummer, 320 Mass. 76, 79 (1946). See Jet Spray Cooler, Inc. v. Crompton, 361 Mass. 835, 839 (1972). Public policy favors an employee’s right to move from job to job unencumbered by restrictions that are not narrowly tailored to protect an employer’s legitimate interests. Club Aluminum Co. v. Young, 263 Mass. 223, 225 (1928).
If an employer designs a machine, invents a process or discovers a formula that has a special business application, the employer has a right to prevent a former employee from using that confidential information for a competitor. Junker, 320 Mass. at 79.
However, a product, process or practice that is familiar to the public and which has a common use does not create an issue of special skills. Club Aluminum, 263 Mass. at 226-28. Sales and marketing skills that are developed on the job are considered general and ordinary skills. Id. Information or methods generally known within an industry may not be treated as confidential information. See National Hearing Aid Centers, Inc. v. Avers, 2 Mass.App.Ct. 285, 289 (1974) (hearing aid retailer not allowed to prohibit employee from selling hearing aids for competitor).
“The employer’s interest in the [protected information or process] must be crystal clear to justify the restraint of the employee, for whom it may have become part of his general knowledge and experience.” Dynamics Research, 9 Mass.App.Ct. at 267 (citations omitted). General concepts, combined with an employee’s talent, are not trade secrets. Id. at 271. An employer “is not entitled to protection of [process or practice] created by its unique capabilify. Uniqueness without more is not commensurate with possession of a trade secret.” Id. at 274-75 (finding no trade secret in coordinated approach of skilled engineers and scientists to a particular problem). An employee’s right to use his or her “general knowledge, experience, memory and skill” promotes the public interest in labor mobility and the employee’s freedom to practice his or her profession, as well as limiting what would otherwise be a restraint of legitimate competition. J.T. Healy & Son v. James A. Murphy & Son, 357 Mass. 728, 740 (1970).
Athena’s non-compete agreement provides a one-year time restriction on Edwards but no geographic restriction. Although a business may protect its legitimate business interests, a covenant not to compete must be no more restrictive than necessary. Marine Contractors, 365 Mass. at 287-88.

Likelihood of Success

The time period of one year here is reasonable. See, e.g., Marine Contractors, 365 Mass. at 288-90. However, the breadth and comprehensiveness of the non-compete clause in Section 3 of the agreement renders it unreasonable. The clause provides that the employee “shall not perform any services, either as a consultant, employee, owner, investor, or otherwise, with or for any foreseeable business, product or service of the Company.” The scope of prohibited activities is extremely broad and vague, particularly given the comprehensive nature of services and products offered by firms such as Athena. Further it is unlimited in geographic scope. The function of the non-compete covenant as drafted appears intended to restrain ordinary competition. Thus, the clause is likely to be determined to be unenforceable.

Irreparable Harm

Athena argues that Edwards could work in some other area of financial services. However, the agreement, on its face prohibits Edwards from performing “any services, either as a consultant, employee, owner, investor, or otherwise, with or for any foreseeable business, product or service of the Company.”
Nothing in the agreement limits the phrase, “any foreseeable business, product or service,” to firms servicing clients with at least $100 million in net worth, or excludes firms engaged in hedge funds, as submitted by Athena in its opposition papers. The conceivable range of Athena’s potential products and services encompasses the entire financial services industry. Based on the plain language of the agree *157 ment, not only is Edwards prohibited from working as an employee or a consultant in any financial services firm, he could plausibly be prohibited from becoming even an investor in another firm.
This covenant, if enforced on its own terms, would preclude Edwards from any work in the financial services industry throughout the world for one year. That poses clear irreparable harm to Edwards’ future career.

Balancing of Harms

Edwards’ interest in earning a living outweighs Athena’s speculative interest in protecting its investment in training its employees, or in avoiding adverse competition. See Woolley’s Laundry v. Silva, 304 Mass. 383, 387 (1939) (“the public and the individual have an interest in every person carrying on his trade or occupation freely. Interference with individual liberiy of trade, if there is nothing more is contrary to public policy . . .”)
The confidentiality and non-solicitation clauses in Section 2 of the agreement are adequate to protect Athena’s goodwill with its clients, as well as its confidential information. As noted, Edwards represented to the Court that he does not contest those provisions.

ORDER

The plaintiffs motion for a preliminary injunction is ALLOWED. The defendant Athena Capital Advisers, Inc. is enjoined from enforcing such provisions of Section 3 of the Nondisclosure/Noncompete/Inven-tions Agreement dated February 2, 2004 that restrict the plaintiff John Edwards’ present or future employment in the financial services and investment management industries.