ANTHONY F. JUNKER *vs.* DONALD C. PLUMMER
(and a companion case [1]).

Middlesex.    April 2, 3, 1946. — July 1, 1946.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Contract,* Of employment.    *Unlawful Interference.    Trade Secret.    Invention.    Agency,* Agent's duty of fidelity.

Employees of a manufacturer, possessor of a trade secret consisting of a novel machine and process for combining shoe cloth, to whom, when they entered his employ, it was made plain that he "had an idea, which he considered of value, unprotected by patent, . . . that it might cause loss to him if it got out to others," that "nobody else had" such a machine, "and that he did not want its operation broadcast to the world," were bound by an obligation implied in the contracts of employment not to use nor to disclose to others, when they left the employment, knowledge of the machine and process which they had gained during their employment, although no express promise of secrecy had been mentioned or required of them and the machine was "of such simple mechanical principle and open construction that anyone possessed of average manual skill who had opportunity to work with it and note its purpose and performance could . . . build a duplicate"; and such obligation was enforceable in equity.

TWO BILLS IN EQUITY, filed in the Superior Court on July 18, 1945.

The case was heard by *Cabot, J.*

*J. J. Gaffney,* for the defendants.

*H. C. Splane,* for the plaintiff.

SPALDING, J.    These are two suits in equity brought to establish the plaintiff's right to a trade secret in a laminating or combining process used in the manufacture of shoe uppers, to enjoin the defendants (who were his former employees) from using or disclosing this secret, and for an accounting for damages and profits.    The cases were referred to a master by orders of reference which required him to "hear the parties, [and] find the facts, including all

---

[1] The companion case is by the same plaintiff against Ernest C. Conti and another.

subsidiary facts upon which his ultimate conclusions are based." The reports of the master were confirmed by interlocutory decrees and final decrees were entered perpetually enjoining the defendants from using or disclosing the process divulged by the plaintiff, and the defendants Conti and Alcorn were ordered to pay $2,000 "as agreed damages."[1] From these decrees the defendants appealed.

The only question presented by these appeals is whether upon the findings of the master the plaintiff was entitled to the relief granted. Findings of the master include the following: During the period from 1918 to 1930 the plaintiff was engaged in the business of duplicating cloth for the glove making industry in New York. Duplicating — or "combining" as the process is called in the shoe trade — is the joining, through the medium of some adhesive substance, of two pieces of material, such as leather with leather or textile, or rubber with textile, or textile with textile, so as to give strength or lining or backing to an exterior used in the manufacture of gloves, shoes and other articles. In the course of this business, the plaintiff· acquired experience and knowledge of the machinery, materials and processes necessary for combining materials successfully.

When, in 1941, leather became scarce, the plaintiff, who had moved to Massachusetts in the meantime, became intensively engaged in the development and perfection of a process for combining shoe cloth. After considerable experimental work he built a machine "with which he went into actual and substantial production." The machine "is of such simple mechanical principle and open construction that anyone possessed of average manual skill who had opportunity to work with it, and note its purpose and performance, could . . . build a duplicate." The plaintiff's machine can be set up ready for use at a cost of $350. Except for a motor which furnishes pressure for a spray gun, it is manually operated, requiring three men to a machine.

---

[1] It was agreed between the plaintiff and the defendants Conti and Alcorn "that if the plaintiff is damaged in law, his damages in fact are the sum of $2,000." With respect to the defendant Plummer the master stated that no evidence of damage to the plaintiff was introduced.

The adhesive is applied by the spray gun, and no steam or other heat is required for drying. The combining of the cloth is effected by means of rollers.

When the defendants entered the plaintiff's employ there was no other machine "faintly resembling . . . [the plaintiff's machine] in use anywhere." There were, however, other combining machines employing the roller principle in joining the materials, but none used a sprayer for the application of the adhesive. Some of the other machines required heating attachments, and all of them were power driven and of heavy construction and cost not less than $3,000.

The defendants Plummer and Conti entered the plaintiff's employ in 1943; the defendant Alcorn began working for the plaintiff in the early part of 1944. Before starting to work for the plaintiff the defendants Plummer and Alcorn had never seen a combining machine; the defendant Conti had worked in a rubber factory where he had seen a combining machine of the heavy power driven type, but he had never worked on one, and had never seen a machine that in any way resembled the plaintiff's. When employing the defendants the plaintiff told them that "the machine was his idea, that nobody else had one, and that he didn't want its operation broadcast to the world. No contract of secrecy was required or mentioned, but it was made plain to . . . [them] that the plaintiff had an idea, which he considered of value, unprotected by patent, and that it might cause loss to him, if it got out to others."

Since the plaintiff "got into full production" he has employed approximately twenty-five men of whom all but five are still in his employ. From time to time friends of the plaintiff's employees and others came to the plaintiff's premises where the machines were in sight and in operation. But there was no evidence that any of these persons interested himself sufficiently to learn the details of the construction and operation of the machine so as to produce it.

The defendant Plummer left the plaintiff's employ in April, 1945, and two months later went into the business of combining shoe cloth. For this purpose he built and used

a machine which is substantially a replica of the plaintiff's machine.  The defendants Conti and Alcorn left the plaintiff's employ in November, 1944, and January, 1945, respectively, and together with two persons unknown to the plaintiff, who subsequently withdrew, went into the business of combining shoe cloth, using a machine substantially similar to the plaintiff's machine.  At the time that the defendants entered the employ of the plaintiff they "did not possess the knowledge, skill and experience required to think of, or build, a machine anything like the plaintiff's, or one that would accomplish its purpose.  They have appropriated the plaintiff's special knowledge, skill and brain child."

The plaintiff on these facts was entitled to the relief granted.  The law is well settled that an employee upon terminating his employment may carry away and use the general skill or knowledge acquired during the course of the employment.  *American Stay Co.* v. *Delaney*, 211 Mass. 229, 232.  *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158, 165.  *Padover* v. *Axelson*, 268 Mass. 148, 151.  *DiAngeles* v. *Scauzillo*, 287 Mass. 291, 299.  *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 282, 283.  *Mechem*, Agency (2d ed.) § 1212.  Am. Law Inst. Restatement: Agency, § 396 (b) and comment on clause (b).  But it is equally well established that out of the "relationship of employer and employee certain obligations arise, including that which precludes an employee from using, for his own advantage or that of a rival and to the harm of his employer, confidential information that he has gained in the course of his employment."  *Woolley's Laundry, Inc.* v. *Silva*, 304 Mass. 383, 386.  *Aronson* v. *Orlov*, 228 Mass. 1, 4–5, and cases cited.  *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158, 165.  Am. Law Inst. Restatement: Agency, §§ 395, 396 (b).

On the facts here the plaintiff had a trade secret in the process or, at least, in the machine which he had devised for laminating shoe cloth.  The master found that until the defendants built a duplicate "there was none other faintly resembling it in use anywhere," and that it was the plain-

tiff's "brain child." When the defendants entered the employ of the plaintiff they "did not possess the knowledge, skill and experience required to think of, or build, a machine anything like the plaintiff's, or one that would accomplish its purpose." All their knowledge of it was acquired solely by reason of their employment. The fact that the machine was easy to duplicate by those who had an opportunity to work with it does not militate against its being a trade secret. The significant thing is that only the plaintiff and his employees knew about it. The present case is distinguishable from *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, relied on by the defendants. In that case the process alleged to be secret had not been developed in its entirety before the defendant employee entered the plaintiff's employ; much of the process was known to the defendant prior to his employment; and he did not learn about it from the plaintiff or solely by reason of his employment.

The owner of a trade secret, in contradistinction to the owner of a patent, has no such right in the idea as will enable him to exclude others from using it. Thus if one acquires the secret by honest means he may use it. *Chadwick* v. *Covell,* 151 Mass. 190. *American Stay Co.* v. *Delaney,* 211 Mass. 229, 231. *Laughlin Filter Corp.* v. *Bird Machine Co.* 319 Mass. 287, 289. Relief is granted to protect the secret only where one is attempting to use or disclose it in violation of some general duty of good faith such as a breach of contract or abuse of confidence. *Peabody* v. *Norfolk,* 98 Mass. 452, 458. *Chadwick* v. *Covell,* 151 Mass. 190. *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158, 165. Am. Law Inst. Restatement: Torts, § 757 and comment a. Mechem on Agency (2d ed.) § 1211.

Although the master found that "no contract of secrecy was required or mentioned," this does not preclude relief. The duty of an employee not to disclose confidential information which he has gained in the course of his employment has been held to rest "upon the implied contract, growing out of the nature of the relation, that the employee will not after the termination of his service use information gained during the period of his employment to the detri-

ment of his former employer." *Aronson* v. *Orlov*, 228 Mass. 1, 5. *American Stay Co.* v. *Delaney*, 211 Mass. 229, 231. *Woolley's Laundry, Inc.* v. *Silva*, 304 Mass. 383, 386–387. *Robb* v. *Green*, [1895] 2 Q. B. 1, *S. C.* [1895] 2 Q. B. 315. There was here no formal document that was intended to express the whole agreement between the parties so as to leave no room for the implication of an agreement for secrecy as in *Laughlin Filter Corp.* v. *Bird Machine Co.* 319 Mass. 287, 289. In the circumstances here we are of opinion that the defendants were bound by an obligation implied in the contract of employment not to use or to disclose to others the plaintiff's process or machine when they left his employ.

*Interlocutory decrees affirmed.*
*Final decrees affirmed with costs.*