**ATLANTIC WOOL COMBING COMPANY, Plaintiff, Appellant,**

v.

**NORFOLK MILLS, INC., et al., Defendants, Appellees.**

No. 6520.

United States Court of Appeals First Circuit.

Heard Nov. 3, 1965.

Decided Feb. 23, 1966.

David Burstein, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for appellant.

Fernand A. Boudreau, Boston, Mass., with whom Henry Paul Monaghan, Holyoke, Mass., and Foley, Hoag & Eliot, Boston, Mass., were on brief, for appellees.

Before ALDRICH, Chief Judge, and HASTIE * and McENTEE, Circuit Judges.

* Sitting by designation.

HASTIE, Circuit Judge.

The plaintiff and the defendants [1] are competitors in the business of dehairing raw cashmere, the fleece of certain Asiatic goats. The raw fleece is a matted mass of soft down, long coarse guard hairs and various impurities. Dehairing is the process of separating the commercially valuable down from the other constituents of the matted mass.

The plaintiff's business was conducted in Rhode Island from 1951 until 1962, when it moved its plant to North Carolina. The defendant is a newcomer in cashmere dehairing, having established its plant in Massachusetts in 1962.

In this suit the plaintiff claims that the defendant has tortiously appropriated the design of certain improved dehairing machinery, which the plaintiff had devised, used and withheld from general knowledge. The complaint, filed in the district court under a claim of diversity jurisdiction, seeks injunctive relief, an accounting and damages.

All of the relevant events and transactions in connection with the alleged tort occurred in Rhode Island and Massachusetts. We have discovered no conflict between relevant principles of law of these states governing liability. Indeed, the controlling concepts enjoy rather general recognition throughout the country.

After a full trial without a jury the court concluded that the mechanism developed, designed and used by the plaintiff "does not constitute a trade secret". The court's findings and decisive conclusions were set out in a brief opinion upon the basis of which judgment was entered for the defendant. The plaintiff has appealed.

The district court found that there are only six to ten American companies engaged in dehairing cashmere and that "machinery used in the industry is not readily available for purchase on the open market. Each company for the most part designs and builds its own machinery and traditionally keeps the nature of its process secret".

Prior to 1960, the method of dehairing employed by the trade proceeded in two stages. First the raw cashmere had to be carded to break up the matted mass to an extent that would enable it to pass through the conventional separating machinery. The principal elements of this machinery were cylindrical rollers and a cylindrical comb. The raw cashmere was compressed as it passed between two feed rollers. Then the emerging matter was brought into contact with a revolving cylindrical comb which removed a large part of the down. In addition to requiring preliminary carding, this process was inefficient in that it left a substantial quantity of down in the raw mass.

Throughout most of 1960, the engineer who was the plaintiff's director of research devoted full time to the devising of more efficient machinery. It was then generally known that in the combing of raw cotton, different from cashmere dehairing, the raw mass was pressed between a roller and a flat plate before being brought in contact with a comb. The plaintiff's engineer undertook to devise similar machinery for cashmere dehairing. He designed a set of iron plates, called pedals, which were to be positioned close to the revolving comb. A fluted feed roll was provided to compress the raw cashmere against the pedals as it moved toward contact with the comb. To make these modified basic elements work efficiently, the engineer also designed a system of fulcrums, levers and springs. This process made possible the forcing of the raw mass, without preliminary carding, through a much narrower opening than was possible with the conventional machinery. The result was a more efficient mechanism which removed a greater percentage of the down than had formerly been recovered.

1. The defendants are two corporations and certain of their officers, all associated in a single enterprise. In this opinion they will be designated as "the defendant".

During the latter part of 1960, the plaintiff contracted with Henry Lawton, the owner of a small machine shop, to fabricate the new structures its engineer had devised and to assist in their installation. The plaintiff's engineer supplied Lawton with the designs, drawings and instructions essential to the production of the new structures. In addition to manufacturing the essential new parts Lawton promised the plaintiff that he would not reproduce them for anyone else.

Among the plaintiff's employees was Roland Letoile. He was a mechanic regularly employed to assist in the repair of the dehairing machinery. In 1960, he actively assisted in the installation of the new machinery. He was aware that the plaintiff treated the design of its machinery as confidential. He left the plaintiff's employ when the business moved from Rhode Island to North Carolina.

In 1962, the defendant employed Letoile in its new cashmere dehairing plant. At that time the defendant knew in a general way that the plaintiff had made some important modifications of its machinery which it regarded as confidential. Letoile informed the defendant that the plaintiff had successfully incorporated a pedal feed mechanism in its operation and that Lawton had made the parts.

The defendant then approached Lawton to solicit the manufacture of a similar pedal feed dehairing mechanism for it. In so doing, the defendant supplied no detailed specifications of its needs. After consulting his lawyer concerning his legal position, Lawton manufactured the desired machinery which was duly installed in the defendant's plant and is now the subject of the present suit.

It appears without contradiction that when Lawton manufactured machinery for the defendants he still had the plaintiff's designs and blueprints in his possession. Moreover, an expert witness testified, and it is not disputed, that the dimensions of the structures in suit are

the same as the dimensions of those designed and used by the plaintiff. And the court below explicitly found that, beyond general similarity to the plaintiff's pedal feeding machinery, the defendant's machine is "a substantially identical device". In these circumstances, we think it is a necessary inference, though no witness explicitly said so, that the defendant asked Lawton to fabricate a mechanism for them in essential conformity with the plaintiff's designs and specifications and that Lawton did so.

Viewing a selected few of the foregoing facts as controlling, the district court concluded that "there can be no trade secret when what is done is to take a device already well known in the [textile] trade and obviously capable of being adapted to use in plaintiff's operation, and adapting it to that operation by means of minor changes well within the capabilities of one skilled in the art". The court had prefaced this conclusion with the more general statement that to merit protection as a trade secret "a mechanism or process must embody some discovery or development not generally known in the trade".

Thus, the court denied the plaintiff's device protection against appropriation because (1) its essential mechanical concepts were already embodied in another well known machine that performed a not very different function, and (2) the adaption of that familiar machine to the exigencies of efficient dehairing of raw cashmere was, in the court's view, a relatively simple undertaking for a competent technician. However, we think these considerations are not decisive against the plaintiff's claim. Indeed, the significance accorded them in the court below unduly narrows the scope of trade secret protection.

■ What some other skilled person could or might have done is not controlling in this type of case, so long as the plaintiff did in fact design for its own exclusive use and withheld from general knowledge a new and different machine which embodied an economically valuable advance in the art and process of de-

hairing raw cashmere. Commercially valuable special knowledge which the plaintiff developed through the exercise of skill and ingenuity, through experimentation and through the expenditure of money and effort over a period of time, was embodied in the design and specifications of its new machinery. Moreover, this occurred in a small industry within which the court below found that each company designs and builds its own machinery and traditionally undertakes to keep the details of its process secret, just as the plaintiff did here. No more novelty or secrecy than these circumstances establish is needed to bring a proprietor's commercially valuable special knowledge within the area of legally protected trade secrets.[2] In contrast, the court below seems to have reasoned that the plaintiff's modification of an old and familiar machine merited protection as a trade secret only if it disclosed something very close to patentable invention over the prior art. This was a mistaken view. "Novelty and invention are not requisite for a trade secret as they are for patentability. * * * The protection is merely against breach of faith and reprehensible means of learning another's secret. For this limited protection it is not appropriate to require also the kind of novelty and invention which is a requisite for patentability." Restatement, Torts, § 757 comment b.

Within this area the law of torts affords limited protection varying with the circumstances. In general, the essence of the wrong is the obtaining of unjust enrichment and unfair competitive advantage through inequitable conduct, usually a breach of confidence.[3] In particular application of this doctrine, the courts rather consistently impose liability on a proprietor of a business who employs unfair means, characterized by breach of confidence, to acquire otherwise undisclosed plans and specifications for a competitor's distinctive structure or machinery and uses them to produce a similar competitive device for his own use and to his competitor's economic detriment.[4]

We have such a case here. Moreover, this is a very strong case for affording protection to the plaintiff because it presents none of the factors which often limit protection. Neither the parties who disclosed the plaintiff's trade secret nor the defendant who appropriated it to his own gainful use contributed any significant technical knowledge, skill or productive effort either in the development of the plaintiff's device or in the design of the defendant's similar structure. Thus, we have no reason to apprehend that the legal protection of the plaintiff's trade secret will impose upon Letoile or Lawton any unfair restriction on the future use of his own technical knowledge and skill; an imposition, the avoidance of which, often limits the protection afforded trade secrets.[5] Similarly, since the defendant did nothing of

2. Junker v. Plummer, 1946, 320 Mass. 76, 67 N.E.2d 667, 165 A.L.R. 1449; Franke v. Wiltschek, 2d Cir., 1953, 209 F.2d 493; Smith v. Dravo Corp., 7th Cir., 1953, 203 F.2d 369; Schulenburg v. Signatrol, 1964, 50 Ill.App.2d 402, 200 N.E.2d 615; Tabor v. Hoffman, 1889, 118 N.Y. 30, 23 N.E. 12; but cf. Sarkes Tarzian, Inc. v. Audio Devices, Inc., S.D.Calif.1958, 166 F.Supp. 250, aff'd 283 F.2d 695, cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L. Ed.2d 859.

3. See Peabody v. Norfolk, 1868, 98 Mass. 452, 458; Servo Corp. of America v. General Electric Co., 4th Cir., 1964, 337 F.2d 716, 722; Witherow Steel Corp. v. Donner Steel Co., W.D.N.Y.1929, 31 F.2d 157, 183.

4. Booth v. Stutz Motor Car Co., 7th Cir., 1932, 56 F.2d 962; Pressed Steel Car Co. v. Standard Steel Car Co., 1904, 210 Pa. 464, 60 A. 4; Schulenburg v. Signatrol, supra, note 2; Tabor v. Hoffman, supra, note 2.

5. See e. g., Wooley's Laundry v. Silva, 1939, 304 Mass. 383, 23 N.E.2d 899, 26 A.L.R. 752; Winston Research Corp. v. Minnesota Mining & Mfg. Co., 9th Cir., 1965, 350 F.2d 134; and see Developments in the Law—Competitive Torts, 1964, 77 Harv.L.Rev. 888, 950; Note, Injunctions to Protect Trade Secrets—The Goodrich and DuPont Cases, 1965, 51 Va.L.Rev. 917.

substance beyond copying the plaintiff's machine, there is no problem here of making allowance for any significant work done by the defendant in reducing the plaintiff's idea or knowledge to practice or in adapting or improving the plaintiff's discovery.[6]

It remains to consider whether the circumstances of the plaintiff's disclosure of the details of its machine to Lawton and the circumstances of Lawton's use of that information for the defendant's benefit constitute such a breach of confidence as makes the defendant's appropriation of the plaintiff's special knowledge tortious. Certainly, Lawton was aware that the plaintiff's designs were not public knowledge and that they had been entrusted to him for the limited purpose of fabrication for the plaintiff's exclusive use. Indeed, Lawton testified that the plaintiff "asked me if I would agree not to make the parts for anyone else * * * and that I agreed to". The assumption of fiduciary responsibility by Lawton and his subsequent liability creating breach of the plaintiff's confidence are clear.[7]

The defendant stands in no better position than Lawton. Furnishing Lawton with no plans of its own, it induced him to build for it a machine like the plaintiff's, well knowing that the details of the construction of the plaintiff's machine were valuable secret information belonging to a competitor. Thus, in legal contemplation, the defendant was as blameworthy as Lawton and equally responsible.[8]

All of the circumstances considered, no legitimate interest of either Lawton or the defendant would be served by giving legal sanction to their appropriation of the plaintiff's trade secret. Rather, seekers after unearned advantage would be allowed without justification to profit at the expense of him whose valuable special knowledge they converted to their own use.

■ We conclude that on the facts as either found by the plaintiff or established without contradiction in the record the plaintiff is entitled to relief. We express no opinion concerning the type or extent of the appropriate remedy.[9]

One entirely distinct question requires brief comment. In the court below the defendant moved to dismiss the complaint on the ground that the amount actually in controversy is less than the jurisdictionally required $10,000. The court made no findings and took no action on this motion, though its disposition of the case on its merits necessarily implies a conclusion that jurisdiction exists.

In the absence of explicit trial findings and conclusions we will not now pass upon this jurisdictional question. Rather, we will instruct the district court to do so upon remand, basing its ruling upon appropriate explicit findings.

6. Contrast J. Irizarry y Puente v. President and Fellows of Harvard College, 1st Cir., 1957, 248 F.2d 799; cert. denied, 356 U.S. 947, 78 S.Ct. 785, 2 L.Ed.2d 822; Smoley v. New Jersey Zinc Co., 3rd Cir., 1939, 106 F.2d 314; Lueddecke v. Chevrolet Motors, 8th Cir., 1934, 70 F.2d 345; Booth v. Stutz Motor Car Co., supra, note 4.

7. Smith v. Dravo Corp., supra note 2; Franke v. Wiltschek, supra note 2; Schreyer v. Casco Products, 2d Cir., 1951, 190 F.2d 921, cert. denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683; Feasel v. Noxall Polish Mfg. Co., E.D.Pa.1920, 268 F. 887.

8. Aronson v. Orlov, 1917, 228 Mass. 1, 116 N.E. 951, cert. denied, 245 U.S. 662, 38 S.Ct. 61, 62 L.Ed. 536; Colgate-Palmolive Co. v. Carter Products, Inc., 4th Cir., 1956, 230 F.2d 855; cert. denied, 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.2d 59; Servo Corp. v. General Electric Co., supra note 3; Solo Cup Co. v. Paper Machinery Corp., E.D.Wis.1965, 240 F.Supp. 126; Restatement, Agency § 312.

9. It has been suggested that the fact, if such be the fact, that a reasonably skilled mechanic could devise a machine equivalent to the plaintiff's without using the plaintiff's secret information may justify limiting relief to money damages. See Restatement, Torts § 757 comment b. But see Franke v. Wiltschek, supra note 2, 209 F.2d at 498, with elaborate dissent on this point by Judge Frank.

If jurisdiction is found to exist, liability shall be imposed in accordance with this opinion and the court shall consider and decide the nature and the extent of the relief to which the plaintiff is entitled.

Judgment will be entered vacating the judgment of the district court and remanding the cause for further proceedings consistent with this opinion.