COLONY CORPORATION OF AMERICA, Plaintiff-Appellant, *v.* CROWN GLASS CORP. *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 81-485

Opinion filed December 16, 1981.

Marvin N. Benn & Assoc. Ltd. and James E. O'Neal & Assoc., Ltd., both of Chicago (Marvin N. Benn, Wayne H. Michaels, and James E. O'Neal, of counsel), for appellant.

Terrance Hutton, of Jenner & Block, of Chicago, for appellee Brockway Glass Company, Inc.

Arvey, Hodes, Costello & Burman and Kantor & Apter, Ltd., both of Chicago (Joel S. Siegel and David Apter, of counsel), for other appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Colony Corporation of America brought this action against defendants Crown Glass Corporation, Candle Corporation of America, and Brockway Glass Company, Inc., for misappropriation of plaintiff's trade secrets. The trial court denied plaintiff's motion for a preliminary injunction against all defendants. The court also dismissed Brockway as a party defendant. Plaintiff appeals both orders.

Plaintiff manufactures and sells glass candle jars for use in restaurants and cocktail lounges. Candle is in the same business and is a competitor of plaintiff. Crown is a glass supplier. Brockway is a manufacturer of glass products.

In 1976 plaintiff obtained blueprints and designs for various glass candle jars, and that same year contracted with Crown for the production of various designs including two named by plaintiff as "Eastex" and

"Weston." Plaintiff delivered certain blueprints to Crown and participated with Crown in the development by Brockway of certain molds to be used in the production of the two glassware designs. Plaintiff directed and Crown agreed that the blueprints and molds were confidential between plaintiff and Crown and not to be utilized for manufacturing glassware for anyone other than Colony. The molds were built and production ensued.

Subsequently, contractual disputes arose between plaintiff and Crown. Each maintained that the other breached its contractual obligations. Incident to this dispute, in November 1978, Crown had on hand a supply of glasses produced for plaintiff but which plaintiff refused to accept. Crown thereafter sold the glassware to Candle, and subsequently contracted with Candle to produce another run for it. In October 1979, Crown used the same molds to produce these candle jars for sale to Candle.

In October 1978, Crown sued plaintiff to collect the balance due for merchandise sold and delivered, and for the merchandise on hand. In that suit, still pending, plaintiff asserted a counterclaim for damages against Crown for the November 1978 sale to Candle.

On December 31, 1979, plaintiff brought the present action against Crown and Candle. In October 1980, when the matter came up on plaintiff's motion for a preliminary injunction, plaintiff was granted a continuance to add Brockway as a party defendant. On February 10, 1981, the trial court granted Brockway's motion to dismiss the complaint. In denying plaintiff's motion to amend its complaint against Brockway, the court stated that it did not believe plaintiff could ever establish a confidential relationship between plaintiff and Brockway. On the same date, the court, having received legal memoranda, conducted a hearing on plaintiff's motion for a preliminary injunction. The court denied the motion, and this appeal follows.

Plaintiff contends that the trial court erred in denying its request for a preliminary injunction against all the defendants. We need only decide whether the court abused its discretion in denying such a request, and we emphasize that we do not reach the issue of plaintiff's suit for a permanent injunction.

■■ A trade secret is a plan, process, tool, mechanism or compound known only to its owners and those employees to whom of necessity the secret is confided. (*Bimba Manufacturing Co. v. Starz Cylinder Co.* (1970), 119 Ill. App. 2d 251, 256 N.E.2d 357.) In that case, the court listed the relevant factors in assessing the existence of a trade secret:

> "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by

the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitor; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information can be properly acquired or duplicated by others. [Citation.]" (119 Ill. App. 2d 251, 264.)

Where a product is out on the market, and the secret is readily disclosed by the product itself there is no trade secret. (*ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 273 N.E.2d 393.) If the secret is not easily ascertainable from the product itself, however, the sale of the products may be enjoined in order to protect the secret despite the fact that the products are not themselves trade secrets but are only the fruits of the use of a trade secret. (*Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 212 N.E.2d 865.) In *Schulenburg*, it was held that the secrecy of blueprints which could not be duplicated absent time consuming and expensive analyses of products in the public domain could be protected by enjoining sale of the products. The injunction in such a case is limited in scope to the time interval required for another to copy legally the secret from the goods on the market. *Schulenburg v. Signatrol, Inc.* See also *Northern Petrochemical Co. v. Tomlinson* (7th Cir. 1973), 484 F.2d 1057.

Applying these principles to the present case, we believe that the trial court properly denied the preliminary injunction. Plaintiff did not show that the blueprints and molds are trade secrets. Plaintiff introduced the candle glasses into the public domain as early as 1977, two years prior to Crown's use of the molds and jars to fulfill its contract with Candle. Once those fruits of the use of the trade secrets were placed on the market, it became incumbent upon plaintiff to show that the prints or molds could not be duplicated from examination of the glasses. (*ILG Industries, Inc. v. Scott.*) This, plaintiff failed to do in its request for a preliminary injunction.

Furthermore, plaintiff did not show that, even if the blueprints and molds were trade secrets, it would be entitled to a preliminary injunction at this point in time. Crown did not use the molds as its own until it produced the glassware for Candle in 1979. Since the alleged misappropriation occurred at least two years after the merchandise reached the market, plaintiff had to show that another could not legally copy the secrets from the goods in a period of two years. Plaintiff offered nothing to demonstrate that an examination of the glassware would not reveal the secret within a period of two years. Consequently, plaintiff did not show entitlement to an injunction exceeding two years in scope.

We turn now to consider the propriety of the trial court's dismissal of the complaint against Brockway. In its complaint against Brockway, plaintiff charged that there was a confidential relationship between

Crown and Brockway and that it was a third-party beneficiary of the relationship between Crown and Brockway.

■■ Equity will enjoin the unauthorized use of a trade secret by a third person not in a confidential relationship with the secret's owner if the third person acquired knowledge of or access to the secret by virtue of another's breach of confidence. (See *Victor Chemical Works v. Iliff* (1921), 299 Ill. 532, 132 N.E. 806; *Arwell Division of Orkin Exterminating Co. v. Kendrick* (1971), 131 Ill. App. 2d 632, 267 N.E.2d 352; *Atlantic Wool Combing Co. v. Norfolk Mills, Inc.* (1st Cir. 1966), 357 F.2d 866; *Colgate-Palmolive Co. v. Carter Products, Inc.* (4th Cir. 1956), 230 F.2d 855; *Ferroline Corp. v. General Aniline & Film Corp.* (7th Cir. 1953), 207 F.2d 912.) If the third person knows of the breach of the confidential relationship when he acquires use of the trade secret, he is liable to the secret's owner to the same extent as the one who breached the owner's confidence. (*Arwell Division of Orkin Exterminating Co. v. Kendrick; Atlantic Wool Combing Co. v. Norfolk Mills, Inc.* See also *Wallace v. Malooly* (1954), 4 Ill. 2d 86, 122 N.E.2d 275; Bogert, Trusts & Trustees §471, at 5-6 (2d ed. 1978).) Where the third person initially lacks knowledge of the breach of confidence he is not liable to the secret's owner for the unauthorized use but the continued use will be enjoined upon receipt of notice of the breach, provided that he has not in good faith paid value for the secret. Restatement of Torts §758 (1939) (not recodified in Restatement (Second) of Torts for reasons not pertinent here). See generally Restatement (Second) of Torts, Introductory Notes to Division 9, at 1-3 (1979).

Under the foregoing criteria, we believe that the trial court erred in dismissing the complaint against Brockway. The complaint alleged that plaintiff participated with Crown "in the development by Brockway, a subcontractor of Crown, of certain molds * * *," that plaintiff directed Crown that the blueprints and molds were confidential and that, in violation of plaintiff's right to exclusive use of the molds, Crown "in conjunction with Brockway" used the molds for production of candle jars for sale to Candle. The complaint stated a cause of action against Brockway. Any issue as to Brockway's payment of consideration for use of the secret was not raised in the trial court and is not before us.

For the reasons stated, the order of the circuit court of Cook County denying plaintiff's request for a preliminary injunction against the three defendants is affirmed. The order dismissing the complaint against Brockway is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Affirmed in part; reversed and remanded in part.

RIZZI, P. J., and McGILLICUDDY, J., concur.