Agnes, A. J.
This matter is before the Court on the request of the plaintiff, Routhier Placement Specialists, Inc. (Routhier), for preliminary injunctive relief against the defendant, Denise L. Brown (Ms. Brown). The applicable standard is that set forth in Packaging Indus. Group, Inc v. Cheney, 380 Mass. 609, 616-17 (1980). In order to prevail, Routhier bears the burden of proving the following: its likelihood of success on the merits, that it will suffer irreparable harm if injunctive relief is not granted, and that its injury will outweigh any harm that granting the injunction will inflict upon Brown. Id.
BACKGROUND
Based on the affidavits and other materials submitted by the parties, the essential facts are not in dispute. Routhier provides temporary and permanent placement services of secretarial personnel in the Boston area. Routhier employs between 7-10 staff members and places 275 temporary and 150 permanent support personnel per year. Routhier hired Ms. Brown, a 63-year-old widow, as a Placement Director on July 26, 1999. As a Placement Director, Ms. Brown worked on permanent placements and facilitated temporary placements as needed. Prior to working with Routhier, Ms. Brown worked in the personnel staffing business for over nine years.
As a condition of her employment, Ms. Brown signed an agreement that contained a non-compete clause. This clause prohibited her from working in the staffing business within a 10-mile radius of Routhier for a one-year time period after leaving her position.
On July 25, 2002 Ms. Brown resigned from Routhier. Shortly thereafter, Ms. Brown began working for Career Connection, which also provides placement services for temporary and permanent placements in the Boston area. As a result, Routhier is seeking a preliminary injunction to enforce the non-compete clause.
DISCUSSION
I. Likelihood of Success
While covenants not to compete maybe enforced in limited circumstances to protect the legitimate business interests of the employer, they are not favored and may not be used to restrain free competition or to deprive the employee of the opportunity to use acquired skills and knowledge to secure other employment. New England Canteen Services v. Ashley, 371 Mass. 671, 674 (1977); Marine Contractors Co., Inc. v. Hurley, 365 Mass 280, 287-88 (1974); Club Aluminum v. Young, 263 Mass. 233, 226-27 (1928).
The reason for this rule is based on sound public policy considerations. There is a public policy in favor of every person carrying on his trade or occupation freely. Woolley's Laundry v. Silva, 304 Mass 383, 387 (1939); Commonwealth v. CRINC, 392 Mass. 79, 87-88 (1984).
*247 The defendant employer may have a right to injunctive relief to protect against the loss of (1) trade secrets, (2) confidential information, or (3) its good will. This is not a case in which an employer has cause to restrain the competitive activities of a former employee on grounds that the employee has taken trade secrets[1] or confidential business information[2] from the former employee. In fact, Routhier has failed to establish that Ms. Brown ever had access to confidential business data. See Dynamics Research Corp. v. Analytical Sciences, Co., 9 Mass.App.Ct. 254, 267-68 (1980).
Neither is this a case in which Routhier has established that a former employee has taken its good will and used it to the employer’s competitive advantage. Good will is defined as encompassing a variety of intangible business attributes such as the “name, location and reputation, which tends to enable a business to retain patronage.” Slate Co. v. Bikash, 343 Mass. 172, 175-76 (1961). There is no evidence that Ms. Brown is trading on Routhier’s good will. A non-competition clause is designed to protect the employer’s good will, not to appropriate the good will of the employee. Sentry Ins. V. Firnstein, 14 Mass.App.Ct. 706, 707 (1982). Furthermore, customer relationships themselves are not protectable. Slade Gorton & Co. v. O’Neill, 355 Mass. 4, 9 (1968). Also, a defendant may take personal skill that was earned before arrival, even if the skill was enhanced while employed. Junker v. Plummer, 320 Mass. 76, 79 (1946); Dynamics Research Corp., supra at 274-75 (1980). Therefore, Routhier is not entitled to rely upon the good will that belongs to Ms. Brown, even if Ms. Brown strengthened her personal skills while at Routhier.
Another factor in establishing good will is a finding of repeat business or referrals by persons with whom Ms. Brown had contact. Folsom Funeral Services, Inc. v. Rodgers, 6 Mass.App.Ct. 822, 843 (1978). Since there is no evidence of repeat sales in this case, restraint is not necessary. Id.
II. Will Routhier suffer irreparable harm if an injunction is not granted?
A plaintiff experiences irreparable harm if there is no adequate remedy at final judgment. GTE Products Corp. v. Stewart, 414 Mass. 721, 724 (1993). Routhier has not demonstrated that it will suffer any irreparable harm if it is left to a remedy at law. As noted above, there is no evidence that Ms. Brown has taken anything from Routhier that it has a property interest in or may claim protection for. The information it references, such as business methods, plans, and techniques is not protectable. Club Aluminum v. Young, supra at 22. The nature of the business in which Routhier and Ms. Brown are engaged is one in which prospective customersoften law firmsdeal regularly with several placement firms and simply select a firm based on whether it meets their needs. (See, e.g., affidavits of Ms. Pamela Sachs and Ms. Diane Cahalane.) The defendant’s characterization of the factual context in which this case arises is accurate:
The business engaged in by the parties, placement of legal secretary and support personnel in the downtown Boston area, is highly competitive with may placement agencies competing with one another. There is nothing unique about the operation of any one of these placement agencies. Sales people gather information, almost exclusively from public sources, regarding law firms’ needs for secretaries and support staff. The identities of these firms is obtained from such sources as Massachusetts Lawyers Weekly, Martindale & Hubbell, Lawyers Diary, telephone books and conversations with applicants. In fact, the major source is an annual supplement of the Massachusetts Lawyers Weekly, entitled “Lawyers Weekly’s Annual Survey of the 100 Largest Law Firms in Massachusetts.” That publication identifies the name of the- firm, its address, telephone number, managing partner and practice areas. That survey is the most valuable source to legal staffing companies and is used, probably, by all of them in Massachusetts. The sales person also locates available positions by placing “cold calls.”
Legal placement firms are simple middlemen that operate by canvassing law firms for work openings then attempt to arrange for secretaries to fill these positions. Any good will associated with a placement belongs to the person making the placement, not the company they work for. As the uncontested affidavits of the defendants clearly show, there are no exclusive relationships and, in fact, law firms actually use several different agencies at one time in order to create the largest pool of potential applicants. It is irrelevant to the law firms which agency fills the position, all they are looking for is the best applicant.
Law firms are usually willing to provide inquiring placement agencies with their current needs. This freedom of information in the marketplace insures the existence of competition at reasonable rates, and results in no exclusive arrangements. This process demonstrates that there are no trade secrets, confidential information, or unique methods of operation in this industry. This non-unique atmosphere enables employees to move freely from one agency to another.
(Defendants’ Opposition to Plaintiffs Motion for Preliminary Injunction, p. 3-4.)
III. Balance of Harm
Ms. Brown will suffer disproportionately if Routhier’s motion is granted. She is a 63-year-old widow without other means of support. Since most of the law firms in Boston are located within a ten-mile radius to Routhier, Ms. Brown would be deprived of self-sufficiency if she is not allowed to work.
*248 On the other side of the equation, the only harm that Routhier will suffer in the absence of injunctive relief is that it will not have the services of Ms. Brown to enhance its cornpetitive position in the marketplace. This is a risk that every employer must face in our free enterprise system.
CONCLUSION
In the record presently before this Court, it cannot be found that Routhier has demonstrated a likelihood of success on the merits of this case. For that reason, the entry of a preliminary injunction would be inappropriate. Consequently, Routhier’s request for preliminary injunctive relief is DENIED.

Trade secret is defined as anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement. M.G.L.c. 266, §30(4).

There are six factors used to define confidential business information. They are as follows: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972).