Welch, J.
After hearing, this Court grants, to a limited extent, the plaintiffs request for a preliminary injunction.
This is a case in which the plaintiff is seeking, among other things, to enforce a non-competition agreement with its former employee, defendant Melanie Hagopian. The plaintiff Fortune is a personnel recruitment firm that specializes in finding employees in the biotechnology and pharmaceutical industries. The defendant Melanie Hagopian was employed by Fortune from December, 1996 to December 4, 1997 when she voluntarily resigned. Prior to being employed by Fortune, defendant Hagopian had no background in personnel recruitment, instead she was employed as a lawyer by the Commonwealth of Massachusetts.
As a condition of her employment, the defendant signed a confidentiality agreement and a covenant not to compete. The defendant was hesitant to sign this covenant because she fully understood its scope and import. Nevertheless, after due consideration, she did sign the covenant not to compete. The covenant not to compete prohibited Ms. Hagopian, following her termination of employment from Fortune, from: (a) working for a competing company (including self-employment) for a period of four months following termination within fifty miles of Fortune’s office; (b) contacting any clients or candidate whose account she handled within two years of termination of her employment with Fortune; and (c) disclosing to a third party or use in her own or another person’s business at any time any confidential information acquired while employed by Fortune.
Ms. Hagopian was trained by Fortune. This included at least one training seminar and in-office training. Defendant Hagopian was also provided various business leads and a copy of a directory of the American Association of Pharmaceutical Scientists which was heavily annotated by another Fortune employee reflecting prior communications with and information about potential candidates.
Hagopian was assigned to recruit candidates in the field of “formulations.” Formulations is a pharmaceutical and bio-technology speciality which mixes various compounds to obtain the most effective delivery system for the treatment of various diseases. Defendant Hagopian was the only recruiter at Fortune having formulations as a speciality. Prior to defendant Hagopian taking over the recruitment of formulations professionals, this area had been handled by another Fortune employee by the name of Ms. Aline Wildes. Currently, Fortune is seeking to hire a new recruiter to take over the formulations area.
Defendant Hagopian was successful as a personnel recruiter in the formulations area. At times, she performed some of her personnel recruiting for Fortune from her home. In order to do this, she took various pieces of property owned by Fortune (including potential client lists, computer software, and other documents) to her home. This was done with the full knowledge and consent of Fortune. The defendant Hagopian has not returned any of this property. Some of this properly is likely to be confidential information possessed by Fortune.
After being employed by Fortune for slightly less than one year, the defendant resigned on December 4, 1997. The defendant made the voluntary decision to resign. One of the reasons that the defendant resigned was that she found that the business offices of Fortune were too cramped for her to comfortably and successfully recruit clients. Defendant Hagopian immediately became self-employed as a personnel recruiter specializing in the formulations area.
During her employment with Fortune, defendant Hagopian had certain conversations with Fortune’s president, Joseph Genovese, regarding the covenant not to compete. Mr. Genovese opined that perhaps the covenant would not be legally enforceable. In addition, the defendant conversed with Mr. Genovese upon her departure from the company. She informed Mr. Genovese that she was, at that time, still working on certain potential personnel placements that she had begun while in the employ of Fortune. She suggested to Mr. Genovese, as to these ongoing personnel recruitment matters, that she split the recruitment fee according to the same percentage formula that applied during her employment at Fortune. There is little doubt that these were potential clients initially developed while defendant Hagopian was employed by Fortune. Defendant Hagopian seeks, by way of a cross motion, an injunction from this Court enjoining the plaintiff from interfering with her ongoing personnel recruitment of these and other individuals.
“If an employer wishes to restrict post-employment competitive activities of a key employee, it may seek that goal through a noncompetition agreement.” Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172 (1991). Employee covenants not to compete are enforceable as long as they protect a legitimate business interest of the employer and are reasonable in scope. See Analogic Corp. v. Data Translation, Inc., 371 Mass. 643 *50 (1976); Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280 (1974). Massachusetts courts have enforced covenants not to compete in order to protect the former employer’s goodwill. See All Stainless, Inc. v. Colby, 364 Mass. 773 (1974). In the field of personnel recruitment, the recruiter plainly plays a critically important role in “gaining and maintaining the goodwill of his employer’s customers [or clients] in a competitive sales [or recruiting] environment.” Id.
This is not a case where the defendant had previously been employed by other personnel recruiting firms and had developed either an expertise or a stable of clients prior to her employment with Fortune. Instead, she was trained by Fortune during her approximately one year period of employment. She also trained herself, while being employed by Fortune, in certain areas of the personnel recruiting business. While Fortune cannot prevent the defendant from utilizing any “general skill or knowledge acquired during the course of employment,” a covenant not to compete may prevent the defendant from taking any confidential information from a former employer or damaging that former employer’s goodwill. See Dynamics Research Corp. v. Analytical Sciences Corp., 9 Mass.App.Ct. 254, 267 (1990), quoting Junker v. Plummer, 320 Mass. 76, 79 (1946). Splitting the difference between allowing the defendant to utilize her “general skill or knowledge” and preventing any undue harm to the former employer’s goodwill may require the Court to enforce only a portion of the covenant not to compete. This Court has the authority to modify terms of a noncompetition agreement so as to make it reasonable. Kroeger v. Stop & Shop Companies, Inc., 13 Mass.App.Ct. 310, 312 (1982).
Taking a potential client who has been developed while under the employ of Fortune, certainly would constitute an invasion of Fortune’s good will. A personnel recruiting firm’s good will is its relations between potential employees and various potential employers. By taking away current clients of Fortune, even though they have not yet finalized any employment transaction, the defendant is indeed damaging the plaintiffs goodwill. Thus, the portion of the covenant not to compete which prevents the defendant from contacting any client or candidate whose account she handled, in any way, while employed by Fortune (for a period within two years of her termination of employment from Fortune), is reasonable in scope and is reasonably drafted to protect the plaintiffs good will. Such damage to good will is likely to be irreparable in that, once it occurs, it cannot be undone and its financial implications are almost impossible to measure. Thus, the defendant is preliminarily enjoined from having any ongoing contact with any potential client or candidate that she initiated contact with while employed with Fortune. This plainly includes any of the potential candidates that she discussed with president Genovese upon her departure.
To the extent that the defendant has taken any materials from Fortune, such as software programs or other information, she is to return that property immediately to Fortune. She is also prohibited from utilizing any copies of that information as it may presently exist on her home computer.
Questions exist, at this preliminary juncture, whether the remainder of the covenant not to compete is reasonable in scope. Thus, the remainder will not be enforced by a preliminary injunction. Therefore, the defendant is entitled to utilize her general knowledge and skills as a personnel recruiter and she can continue to recruit professionals in the formulations field. Her potential clients or candidates, however, cannot be any that she had personal dealings with (at least for the next two years) while employed at Fortune.