Botsford, J.
The plaintiff Oxford Global Resources, Inc. (Oxford) brings this action to enforce certain provisions of a confidentiality, non-solicitation and non-competition agreement signed by one of its former employees, the defendant Jason Consolo. Oxford also seeks to enforce the terms of Consolo’s agreement against Consolo’s current employer, the defendant MPS Group, Inc. d/b/a Entegee, Inc./Systems Pros, Inc. (Systems Pros). Presently before the court is Oxford’s motion for a preliminary injunction, which the defendants oppose. After hearing, and for the reasons discussed below, the motion is allowed.

Background

In addition to the verified complaint, the preliminary injunction record includes affidavits and other materials submitted in support and in opposition to the motion. These various sources indicate the following. Oxford is a national recruitment temporary contract staffing firm which has eighteen offices located throughout the continental United States. Its recruiters identity and place skilled software and hardware engineers for temporary assignments with thousands of corporate clients. Oxford’s recruiters also develop and maintain relationships with contract employee clients (“contractors”) for the purpose of placing them on temporary assignments. Oxford has three Massachusetts offices, located in Boston, Beverly and Belchertown, Massachusetts.
Oxford hired Consolo in October 1998 to work for Oxford & Associates, Inc., Oxford’s predecessor company, and he remained employed by Oxford itself. Consolo worked as a recruiter in Oxford’s sales office and his responsibilities included identifying and recruiting available contractors for placement with Oxford’s corporate clients that were seeking temporary assistance in the hardware and software engineering fields. Before Consolo began his employment at Oxford, be had no previous working experience in this field, as a recruiter or otherwise. Oxford trained him to become a recruiter and, through this process, Con-solo gained access to Oxford’s confidential databases, business plans, and strategies. In his recruiting capacity, he contacted approximately 150 contractors and corporate clients each work day. (Consolo Affidavit, ¶21.)
In September 2001, Consolo transferred to and began working as a recruiter in Oxford’s Chandler, Arizona, office; he remained there until the end of July 2002.[2] While working in Arizona, Consolo was a ‘Team Leader,” and supervised three other recruiters. According to Oxford, one of Consolo’s supervisory responsibilities was to approve each of these recruiters’ individual exclusive “A-List” of contractors with whom he or she was working. Consolo also had his own “A-List” of specific contractors with whom he personally worked. Throughout Consolo’s four years of employment with Oxford, his job responsibilities focused on placing contractors with Oxford’s corporate clients for temporary employment assistance.
When he first began working for Oxford in October 1998, Consolo signed an employment agreement that prohibited him from using or disclosing any of Oxford’s confidential and proprietary information outside of Oxford, from soliciting contractors or clients of Oxford for a period of twelve months, and from working for a competitor of Oxford for a period of six months. In December 2000, Consolo signed another agreement with similar non-disclosure, non-solicitation and non-compete provisions in consideration for stock options and continued employment (“employment agreement”). This second employment agreement is the one that Oxford seeks to enforce (in part) at the present time.
The non-disclosure provisions of the employment agreement provide:
During the term of Employee’s employment with the Company [i.e. Oxford] and thereafter, Employee will not, directly or indirectly, use or disclose to anyone . . . any of the Confidential Information[3] revealed to or learned by Employee during the course of Employee’s employment with the Company, unless such use or disclosure is both consistent with the Company’s obligations and for the sole purpose of carrying out Employee’s duties to the Company. Employee understands and agrees that this restriction will continue to apply after Employee’s employment with the Company terminates, regardless of the reason for such termination.
(Employment agreement, ¶1.4.)
The employment agreement’s non-solicitation provisions state in relevant part:
Employee agrees that, during the term of Employee’s employment with the Company, and for a period of twelve (12) months following the termination of Employee’s employment, Employee will not, directly or indirectly:
(b)(i) solicit or seek to place any temporary employee or independent contractor candidate directly or indirectly placed by Employee or sought to be placed by Employee or whose identify Employee learned while employed by the Company, which placement is for or on behalf of any entity engaged in ... the Company’s Business, or (ii) persuade, induce or attempt to persuade or induce any such person to leave his/her temporary employment or to refrain from providing services to the Company or its customers; or
(c)(i) solicit or seek to provide services to any corporate customer directly or indirectly serviced by *417 Employee or sought to be serviced by Employee, or whose identity Employee learned while employed by the Company, which solicitation is for or on behalf of any entity engaged in . . . the Company’s Business; or (ii) persuade, induce or attempt to persuade or induce any such entity to alter or reduce its use of services from the Company.
[Id., 112.3(b), (c).)[4]
Effective August 8,2002, Consolo voluntarily resigned from his employment at Oxford. Approximately one week before this date, Consolo requested and received a copy of the employment agreement. Oxford also sent Consolo a separation letter shortly after his departure, reminding him of the terms of the employment agreement. Consolo entered into discussions with Systems Pros about a recruiter position and began working in one of its Massachusetts offices on September 23, 2002.[5]
Systems Pros, like Oxford, is a temporary contract staffing firm that specializes in specific engineering and technical employment placements. Consolo states that his responsibilities at Systems Pros include “contacting] Contractors in an effort to match them with potential employers” and that he calls “between 120 and 150 Contractors per work day.” (Consolo Affidavit, ¶¶37 and 38.)
Oxford’s verified complaint and the affidavits it has submitted state that since joining Systems Pros, Con-solo has solicited or attempted to solicit business from a number of Oxford’s contractors with whom he had contact during his last twelve months of employment at Oxford, and has done so both before and after Oxford commenced this action in October 2002:
According to the verified complaint, on October 21, 2002, Consolo solicited one of Oxford’s contractors, Jim Sperath, regarding potential employment with Systems Pros. Sperath has previously been assigned to work with Consolo during his employment at Oxford. In addition to Sperath, Consolo contacted at least three other contractors (Scott Martin, Simon Ramirez, and Kirk Stapler) whom he had worked with or placed while employed by Oxford.
Between October 2002 and March 2003, Oxford states it has discovered (from documents produced in discov-eiy by the defendants) that Consolo had in his possession at Systems Pros a notebook containing the names of and contact information (e.g., address, telephone number, email address) for 43 Oxford contractors with whom he worked while employed by Oxford.
Also between October 2002 and March 2003, according to the discovery Oxford has received, Consolo contacted fifteen Oxford contractors with whom he had worked within the last twelve months of his employment there, and at least two others who were on the contractor list of a recruiter he had supervised.
Tiffani Calderon, a former employee of Oxford’s Chandler, Arizona, office, states in an affidavit that on March 7 and 12,2003, as she was leaving Oxford for another job, she received two, and perhaps three, telephone calls from Consolo, asking if she still had access to the Oxford computer files and if she wanted to make some money; she did not.
With respect to Systems Pros, in October 2002 Oxford’s general counsel notified the president of Systems Pros, Robert Cecchini, about Oxford’s concerns that there were ongoing violations of Consolo’s employment agreement. Cecchini’s response was that Systems Pros was aware of the agreement, but felt that any contractors who were not currently performing assignments for Oxford were “fair game,” and in substance that Consolo was free to contact them.
In his affidavit, Consolo denies he has contacted any Oxford corporate clients that he had dealt with or who were known to him as Oxford clients, and further states that to the extent he has contacted any contractors who were known to him while working at Oxford, he obtained their names from an independent, publicly available source or a source provided by Systems Pros.[6] He further states that while at Systems Pros, he has not placed any contractors with whom he had contact at Oxford, or solicited any contractors whom he had placed while at Oxford. Finally, he states he has not used or disclosed any confidential information he learned while employed at Oxford.
Oxford filed this action in late October 2002. Based on what it characterizes as ongoing violations of Consolo’s employment agreement, Oxford has now moved for a preliminary injunction to enforce the confidentiality/non-disclosure and non-solicitation provisions of Consolo’s employment agreement, and to enjoin Systems Pros from employing Consolo in violation of these provisions.

Discussion

To prevail on its request for a preliminary injunction, Oxford must show a likelihood of success on the merits of its claims, that it will suffer irreparable harm without the requested injunctive relief, and that its harm, without the injunction, outweighs any harm to Consolo and Systems Pros from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
I. Likelihood of Success on the Merits
The non-solicit provision of the Employment Agreement prohibits Consolo from soliciting any “temporary employee,” “independent contractor candidate” or “corporate client” whose identity he learned of or whom he placed or serviced, either directly or indirectly, while employed at Oxford. The confidentiality/non-disclosure provision prohibits Consolo from using or disclosing any confidential or proprietary information learned or revealed to him while employed with Oxford.
Employee covenants not to compete — the general name used for covenants not to use proprietary information or solicit customers of the former employer as well *418 as not to work for a competitor of the former employer — are enforceable as long as they protect a legitimate business interest of the employer. See, e.g., Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 281 (1974); Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 716 (1961); Fortune Personnel Consultants of Boston, Inc. v. Hagopian, 8 Mass. L. Rptr. 49, 1997 Mass.Super. LEXIS 52 (1997). A non-competition agreement will be enforced if, based upon all of the circumstances, it is reasonable in geographical and temporal scope. See All Stainless, Inc. v, Colby, 364 Mass. 773, 779-80 (1974).
Protection of the employer from ordinary competition, however, is not considered a legitimate business interest and a covenant not to compete designed solely for that purpose is not enforceable. Marine Contractors, Inc. v. Hurley, supra, 365 Mass. at 287-88; Richmond Bros., Inc. v. Westinghouse Broadcasting Co., Inc., 357 Mass. 106, 111 (1970).
An employer’s good will refers to “the employer’s positive reputation in the eyes of its customers ... [and] is generated by repeat business with existing customers or by referrals to potential customers.” Bowne of Boston, Inc. v. Levine, 7 Mass. L. Rptr. 685, 1997 Mass.Super. LEXIS 69, citing Marine Contractors Co., Inc. v. Hurley, 365 Mass. at 287. It is an interest that legitimately may be protected through enforcement of covenants not to compete. See All Stainless, Inc. v. Colby, supra, 364 Mass. at 779-80; Fortune Personnel Consultants of Boston, Inc. v. Hagopian, supra, 8 Mass. L. Rptr. 49, 1997 Mass.Super. LEXIS 52. One of the particular settings in which courts have been willing to enforce such covenants in order to preserve good will is in sales and marketing competition by former sales employees. See, e.g., All Stainless, Inc. v. Colby, supra; Darwin Partners, Inc. v. Signature Consultants LLC, 2000 Mass.Super. LEXIS 614; Bowne of Boston, Inc. v. Levine, supra, 7 Mass. L. Rptr. 685, 1997 Mass.Super. LEXIS 69.
The affidavit of Lina Gallotto details the work and resources that Oxford devotes to the development of business relationships between its staff and corporate clients, as well as its recruiters and contractors. The affidavit states that many of Oxford’s relationships with new contractors are developed from leads provided by existing contractors, not from public domain sites. While Consolo disputes the strength and value of his own relationships with contractors he personally contacted on behalf of Oxford, the record provided by Oxford in support of its motion is sufficient to show a likelihood of success on its claim that its good will (and business success) is tied closely to the work and contacts of its recruiters like Consolo, and that therefore it is entitled to protect those contacts through use of an employment agreement that precludes solicitation of Oxford contractors for a reasonable period of time. See, e.g., Modis, Inc. v. The Revolution Group, Ltd., 11 Mass. L. Rptr. 246, 1999 Mass.Super. LEXIS 542. See also Darwin Partners, Inc. v. Signature Consultants LLC, 2000 Mass.Super. LEXIS 614. See generally Marine Contractors Co., Inc. v. Hurley, supra 365 Mass. at 287; All Stainless, Inc. v. Colby, supra 364 Mass. at 779-80. Cf. Robert Half International Inc. v. Buoncontri, 15 Mass. L. Rptr. 742, 2003 Mass.Super. LEXIS 67 (non-compete agreement contained no specific provision barring solicitation of candidates, but confidentiality provision in agreement would prohibit using proprietary information of former employer to contact and solicit candidates who former employee knew to be connected to former employer).
What has just been said applies with equal force to Oxford’s confidential and proprietary business information, a point that Consolo does not seem to dispute. (Consolo’s point is rather that he has not used or disclosed any of Oxford’s protected confidential information.) The employment agreement includes within the category of “confidential information” business plans, forecasts, pricing structure, budget information, etc., and contractor and client lists as well as related information such as resumes, special needs, employment requirements, preferences, contact information and contacts. Oxford has shown that it takes steps to protect the confidentiality of these types of information, and is entitled to protect its confidentiality and non-disclosure by former employees. While, as mentioned, Consolo states he has not used any such information, he did apparently have in his possession at Systems Pros a book with a fair amount of contact information about 43 contractors associated with Oxford, and in fact he has contacted more than 15 contractors with whom he had contact or of whom he learned while employed by Oxford. Oxford cannot prevent Consolo from using his own skills, knowledge, or talent or prevent him from ordinary competition, but it may enforce its legitimate business interests by prohibiting the disclosure of confidential and proprietary information. See Modis, Inc. v. The Revolution Group, Ltd., supra 11 Mass. L. Rptr. 246, 1999 Mass.Super. LEXIS 542 at *14-15.
In sum, Oxford has shown that it is likely to succeed in its claim to enforce the non-solicitation and confidentiality/non-disclosure provisions of the employment agreement.
II. Likelihood of Irreparable Harm and Balance of Interests
A careful reading of the facts demonstrates that enforcement of the non-solicit and non-disclosure provisions of the employment agreement is necessary to prevent irreparable harm. Apparently since October of 2002, Consolo has solicited or attempted to solicit contractors with whom he worked, placed or of whose existence and connection to Oxford he knew about while employed for Oxford. These activities have a real potential for damaging Oxford’s good will, and if they continue, the damage is likely to continue as well. It is damage that is not easily measured, and for this reason, the harm may well be irreparable. See Kroeger v. Stop & Shop Cos., Inc., 13 Mass.App.Ct. 410, 312 *419 (1982); Darwin Partners, Inc. v. Signature Consultants, LLC, supra, 2000 Mass.Super LEXIS 614.
Oxford has also shown on the present record that the balance of harms tips in its favor in the circumstances. There is really no debate about the propriety of the confidentiality/non-disclosure provision of the employment agreement, and the obligation of Consolo to comply with it. With respect to the non-solicitation clause, it is reasonably drawn to preclude Consolo from contacting only individuals that he actually was connected to or knew about while he was at Oxford — unlike some agreements, this one does not attempt to reach all contractors or clients of Oxford, regardless of Consolo’s own level of contact or knowledge. Oxford seeks to enforce this clause, but not the non-compete clause which would have prevented Consolo from working for Systems Pros at all, at least for a limited time. This is a reasonable, narrowly tailored approach that permits Consolo to continue to work, to use non-Oxford sources of information in order to contact contractors, and simply to refrain for a limited time from contacting a limited number of persons with whom he had some relationship or contact, or of whom he had knowledge. The balance of harms and interests weighs in favor of Oxford.[7]
There is one remaining question concerning the non-solicitation agreement, however, which concerns the date on which the twelve months called for in the employment agreement should begin to run. The agreement itself states that the non-solicitation covenant runs “for a period of twelve (12) months following the termination of Employee’s employment . . .” (Employment agreement, ¶2.3.) In Consolo’s case, the twelve months would have begun to run no later than August 8, 2002. Oxford contends, however, that in light of the fact that after joining Systems Pros Consolo embarked on a repeated course of violating the non-solicitation clause of the Agreement for several months despite warning letters on the subject, Oxford should be entitled to have the twelve months run from the date of any preliminary injunction order. See Modis, Inc. v. The Revolution Group, Inc., supra, 11 Mass. L. Rptr. 246, 1999 Mass.Super. LEXIS 542 at *27-28. It does appear that Consolo has violated the non-solicitation clause on a good number of occasions, facts that Oxford was able to demonstrate with clarity only after some discovery. As a consequence, I conclude it would be reasonable to require Consolo to refrain from soliciting Oxford contractors in violation of his employment agreement for a period of twelve months from April 1, 2003, the date near to when discovery on this issue was reasonably complete.
III. Injunctive Relief Against Systems Pros
Oxford seeks to enjoin Systems Pros from employing Consolo in direct or indirect violation of his employment agreement. To the extent that Oxford requests Systems Pros not to permit Consolo to violate the non-solicitation and confidentiality/nondisclosure provisions in the employment agreement, on the present record — including as it does Systems Pros’ conscious disregard for the non-solicitation clause in the employment agreement, Oxford is entitled to relief. To the extent Oxford seeks some form of broader relief, no basis has been shown to grant it.

ORDER

For the foregoing reasons, it is ordered as follows:
1. For a period of twelve months beginning April 1, 2003, the defendant Jason Consolo is preliminarily enjoined from directly or indirectly soliciting contractors or contractor candidates whom he placed or sought to place, or whose identity he learned while employed for the plaintiff Oxford Global Resources, Inc. (Oxford), which placement is for or on behalf of MPS Groups, Inc. d/b/a Entegee, Inc/Systems Pros, Inc. (Systems Pros) or any entity engaged in or seeking to be engaged in the same business as Oxford.
2. For a period of twelve months beginning April 1, 2003, the defendant Consolo is preliminarily enjoined from soliciting or seeking to provide services to any corporate customer directly or indirectly serviced by him or sought to be serviced by him while employed by Oxford, or whose identity the defendant learned while employed by Oxford, which solicitation is for or on behalf of Systems Pros or any entity engaged in or seeking to be engaged in the same business as Oxford.
3. The defendant Jason Consolo is preliminarily enjoined from directly or indirectly using or disclosing to any party outside of Oxford any confidential or proprietary information of Oxford, including any customer, corporate client, contractor or candidate lists, contact information relating to any of the above, contractor or client documents (such as resumes), or employment requirements or preferences of any of the above; and from failing to return to Oxford any of its confidential information in his possession, custody or control.
4. The defendant Systems Pros is preliminarily enjoined from employing the defendant Jason Con-solo in direct or indirect violation of the non-solicitation and the confidentiality/nondisclosure provisions in Consolo’s employment agreement with Oxford, respectively set out in ÍI2.3(b) and (c), and ¶1.4 of that agreement.

There appears to be a dispute between the parties as to whether the last office in which Consolo worked was in Arizona or Massachusetts: Consolo maintains it was in Arizona, and Oxford maybe claiming that Consolo briefly returned to Massachusetts in August 2002, and left the company’s employ from there. This dispute need not be resolved at this time, however, because its only relevance is to the non-competition provision in Consolo’s employment agreement, and Oxford does not currently seek to enforce that provision. See note 4 below.

The term “Confidential Information” in the Non-Compete Agreement is defined in relevant part as “. . . any and all information . . . concerning: . . . (c) candidates and contractors, including lists, resumes, and related information; (d) the Company’s customers and prospective customers, including their identity, special needs, job orders, preferences, transac *420 tion histories, contacts, characteristics, agreements and prices . . .” (Employment agreement, 11.3.)

The Employment Agreement also has a non-competition provision:
Employee agrees that, for a period of six (6) months after termination of Employee’s employment, Employee will not, directly or indirectly, compete with the Company’s Business, or otherwise own, maintain, operate, engage in, assist, be employed by, or have any interest in any business engaging in or planning or preparing to be engaged in the Company’s Business, within fifty (50) miles of any office of the Company to which the employee was assigned during the last twelve months of his/her employment with the Company.
(Employment Agreement, ¶2.2.) As previously stated in the text, Oxford is not seeking to enforce this provision at the present time, and it is not further discussed.

Systems Pros, though its Entegee, Inc., division, maintains Massachusetts offices in Waltham, Billerica, Burlington, Norwood and Tyngsboro.

Consolo also states in another paragraph of his affidavit that he has not solicited or sought to place any contractor whose identity he learned while at Oxford. (Consolo affidavit, ¶49.) This seems somewhat inconsistent with his earlier statement (set out in ¶41 of his affidavit) that is summarized in the text.

On the point of non-solicitation, the arguments and papers of the parties suggest some disagreement about how many individuals Consolo is prevented from contacting. To avoid future problems relating to enforcement of the injunction that will enter, I ask that the parties explore whether Oxford can provide Consolo with a list of individual contractors that Oxford has concluded — from Consolo’s “A-list,” call sheets, and other information — fall within the scope of the non-solicitation clause of the employment agreement. I believe it is preferable not to enter an order on this issue at present, but to see if the parties can work this out voluntarily, but if they are unable to do so, they should contact the court.